[Crim. No. 18512. First Dist., Div. Four. Dec. 20, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN ERIC ANJELL, Defendant and Appellant.

■■■■■■■■■

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Philip M. Brooks and Phyllis J. Hamilton, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Timothy A. Reardon and John B. Moy, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RATTIGAN, J.**—Appellant John Eric Anjell was charged in a two-count information with having committed robberies (Pen. Code, § 211)[1] in Pleasant Hill and Orinda on October 22, 1977. It was also alleged in the information that he had been armed with and used a firearm during the commission of each offense, and that he had two prior felony convictions. The first prior was a 1971 Nevada conviction of grand larceny. The second was a 1974 Alameda County conviction of receiving stolen property. Appellant admitted both priors in the course of his jury trial.

The jury found him guilty of the Pleasant Hill robbery as charged in count one, and made a special finding that he had been armed within the meaning of section 12022, subdivision (a), during the commission of the offense. The jury also found him guilty of the Orinda robbery as charged in count two, and made special findings that he had used a firearm within the meaning of sections 12022.5 and 1203.06, subdivi-

---

[1]Statutory references are to the Penal Code except where expressly indicated otherwise.

■■■■■

sion (a)(1), and that he had been armed within the meaning of section 12022, subdivision (a), during the commission of the offense.

The trial court sentenced him to state prison for a total term of eight years. The terms imposed on the two counts were ordered to run consecutively, with enhancement terms added by reason of the special findings and the two priors admitted by appellant. He appeals from the judgment of conviction.

## THE TRIAL

### The Prosecution's Case

Robert Michie, an employee at a service station located in Orinda, testified that he was robbed by two men as he was closing the premises at 8:30 p.m. on October 22, 1977. One of the men, whom Michie identified as appellant, was armed with a shotgun. The robbers took approximately $100 from the station and Michie's wallet, which contained a few dollars. A few weeks later, Michie selected appellant's picture from a lineup of police photographs. He made positive in-court identifications of appellant at the preliminary examination and the trial.

Gail Schneider testified that she was working in her office at the Greyhound depot in Pleasant Hill on the night of October 22, 1977. Two men entered the depot at 9:27 p.m. and robbed her. The shorter of the two men was armed with a gun. They took money from the cash register in the depot. The witness subsequently identified Daniel Tillery as the robber with the gun. She could not identify appellant as the other man, but she testified that he had a similar height and build. She also testified that she had become acquainted with appellant outside the courtroom at his preliminary examination, that she had made a trip to Sacramento with him, and that he had subsequently visited her at the Greyhound depot.

Detective Frank Fonda and Officer Jack Harper testified to a series of statements appellant had made to one or both of them concerning the Orinda and Pleasant Hill robberies. On November 14, 1977, he told Fonda that he had been present when both robberies were committed; that he was only "technically involved" in them, and had been no more than a nonparticipating bystander on each occasion; that the robbers were two men whom he had met for the first time on October 22, 1977;

and that he knew the men only as "Danny" and "Billy." He identified Daniel Tillery as "Danny," but did not identify "Billy," from some police photographs. On November 15, 1977, Officer Harper arrested him for the Orinda robbery and told him that he was suspected of having committed the robbery in Pleasant Hill. Appellant then confessed that there was no such person as "Billy," and that he and Tillery had committed both crimes.[2]

## The Defense

Appellant called Donald Payne and Patricia Wulbern as alibi witnesses. Payne owned a restaurant in Pleasant Hill. Wulbern worked there as a waitress. They both testified that appellant had been in the restaurant throughout the evening of October 22, 1977.

During an interval between the testimony of these two witnesses, appellant made a so-called "*Beagle* motion" (*People* v. *Beagle* (1972) 6 Cal.3d 441, 451, 454 [99 Cal.Rptr. 313, 492 P.2d 1]) for an order preventing the prosecution from impeaching him with the two prior felony convictions, which he had then admitted, if he testified in his own defense. The trial court denied the motion, and he elected not to testify.

## REVIEW

### Claimed Impeachment Error

Appellant contends that the trial court prejudicially abused its discretion in denying his "*Beagle* motion." ■ The Supreme Court has established that a trial court must consider at least four factors, in determining whether to allow a defendant to be impeached with a prior conviction pursuant to Evidence Code section 788, to assure that the potentially prejudicial effect of the conviction does not outweigh its probative value as contemplated in Evidence Code section 352. The factors are (1) the prior conviction's bearing on the defendant's honesty, integrity and veracity; (2) its remoteness in time to the offense charged; (3) the similarity between the conduct involved in the prior and the conduct for which the defendant is on trial; and (4) the desirability that the jury hear the defendant's version of the case. (*People* v. *Beagle, supra*, 6

---

[2]All of these statements, including appellant's complete confession, were made freely, voluntarily, and after he had been given successive *Miranda* warnings. He does not contend that any of the statements were inadmissible.

Cal.3d 441 at p. 453; *People* v. *Rist* (1976) 16 Cal.3d 211, 218-219 [127 Cal.Rptr. 457, 545 P.2d 833].)

■ Appellant first contends that the trial court failed to consider *all* of the foregoing factors because its ruling on the *Beagle* motion made no reference to the importance of having the jury hear appellant's testimony.

Although the court's discussion included explicit references to the first three *Beagle* factors only, a close reading of the record demonstrates that the fourth factor was also considered. In defense counsel's written points and authorities on the motion, he asserted that it was more important for the jury to hear the defendant testify than to have him remain silent through fear of impeachment, and that "priors may be excluded on this ground alone."

In oral argument on the motion, counsel stated that an adverse ruling "may compel Mr. Anjell not to take the stand and give evidence in his own behalf." The prosecutor cited passages in *Beagle* to the asserted effect that a defendant should not be permitted to "blackmail" the trial court by threatening not to testify. Immediately after this exchange, the court announced that "... applying the *Beagle* standards [plural] *and weighing the factors that I must weigh* in making the decision, I am going to deny the *Beagle* motion...." (Italics added.) The record thus dispels the contention that the court did not consider all the *Beagle* factors.

■ Appellant next contests the court's ruling on its merits. Application of the *Beagle* principles produces several conclusions to be enumerated as follows:

(1) The crimes of grand larceny and receiving stolen property are both recognized as reflective of a person's honesty and integrity, and are therefore probative for purposes of impeachment. (See *People v. Beagle, supra,* 6 Cal.3d 441 at p. 453; *People v. Banks* (1976) 62 Cal. App.3d 38, 44 [132 Cal.Rptr. 751]. Cf. *People v. Rist, supra,* 16 Cal.3d 211 at p. 220.) Appellant in effect proposes the adoption of a new rule of exclusion for all crimes which do not involve making false statements, arguing that only offenses which require false assertions significantly bear upon a defendant's ability to lie or feign sincerity. A holding to that effect would effectively eliminate "honesty" and "integ-

rity" as traits which bear upon credibility, and would be contrary to the Supreme Court's pronouncements on the subject. (*People* v. *Beagle, supra*; *People* v. *Rist, supra*. See also *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) In any event, there is no merit in the argument that a person's propensity to give false testimony may be shown *only* by instances of past lying. In many instances, actions speak louder than words.

(2) The respective prior convictions having been three and six years old, they were not so remote in time as to diminish their probative value. (See *People* v. *Boothe* (1977) 65 Cal.App.3d 685, 688-689 [135 Cal.Rptr. 570] [six-year-old robbery conviction not too remote].)

(3) Grand larceny and receiving stolen property are somewhat similar in nature to the crime of robbery with which appellant was charged. Because all three offenses are larcenous, there was a degree of risk that the jury might be persuaded to find appellant guilty of the robberies on the basis of his past larcenous conduct. (See *People* v. *Rist, supra*, 16 Cal.3d 211 at p. 219; *People* v. *Banks, supra*, 62 Cal.App.3d 38 at p. 44.) However, the crime of robbery is assaultive as well as larcenous (*People* v. *Rist, supra*, at p. 220), and preponderantly so in the perception of lay people sitting as jurors. The risk mentioned was accordingly diminished because neither of appellant's priors indicated assaultive conduct in the past. No abuse of discretion has been shown in the trial court's treatment of the third *Beagle* factor.

(4) The fourth *Beagle* factor presents a more difficult problem because of appellant's election not to testify after his *Beagle* motion was denied. The problem originated because the trial court had no way of knowing what his testimony might be when it ruled on the motion. It persists on this review because we have no way of knowing what his testimony might have been if the motion had been granted and he had elected to take the stand. He supplied no indication of his testimony by making an offer of proof on the motion, but none was required. (*People* v. *Rist, supra*, 16 Cal.3d 211 at p. 222.) None could be *required*, in any case, without indirectly compromising the constitutional right of a defendant not to testify directly. (*People* v. *Fries* (1979) 24 Cal.3d 222, 232-233 [155 Cal.Rptr. 194, 594 P.2d 19].)

In consequence, the combination of an unsuccessful *Beagle* motion and the failure of the defendant to testify requires a reviewing court to

hypothesize substantive testimony from a silent record. Appellant contends that his motion should have been granted in order to permit the jury to hear his "version and/or explanation of his confession," with particular reference to the Pleasant Hill robbery. This is legitimate argument by appellate counsel, but it still invokes no more than hypothetical assessments of testimony not given. The result exemplifies the *Rist* court's observation that "[p]erhaps the most difficult to evaluate of the *Beagle* factors is the adverse effect on the administration of justice should a defendant elect not to testify for fear of impeachment." (*People* v. *Rist, supra*, 16 Cal.3d 211 at p. 222.) The court followed the observation by defining the only way out of the difficulty: the requisite "evaluation must necessarily depend in large part on the totality of other evidence bearing on the question of the defendant's guilt in the unique circumstances of the particular case." (*Ibid.*) We follow the way.

Appellant's *Beagle* motion was not made until after his first alibi witness had testified, and immediately before the second one took the stand. The record supports the inference that the trial court was aware of the second alibi witness, and her prospective testimony, when it ruled on the motion. Both witnesses testified to the alibi defense in detail, and each corroborated the other. We may reasonably assume (i.e., hypothesize) that appellant would have testified to his own "version" of his alibi. His testimony was not essential to the alibi defense, of which it would have been corroborative and cumulative. The order denying his *Beagle* motion thus did not operate to impair his presentation of the defense in any respect.

The only other prospect conceivably frustrated by the order was appellant's opportunity to give the jury an "explanation of his confession," as his attorney now suggests. Any possible advantage to have been derived from that effort was reasonably offset by the fact that it would inevitably have refocused the jury's attention on the confession and its damaging effect. There was also a substantial degree of risk that appellant's own credibility would be impaired if he attempted a plausible "explanation" and failed. That result would have impaired the credibility of the alibi witnesses whose testimony he would presumably (i.e., hypothetically) have corroborated.

Our recital of the hypothetical circumstances must end short of impermissible speculation by this court as to what and whom the jury

might have believed. (See *People* v. *Spearman* (1979) 25 Cal.3d 107, 118-119 [157 Cal.Rptr. 883, 599 P.2d 74].) The totality of circumstances (both real and hypothetical) distinguish this case from each of several "*Beagle* decisions" in which the factor of the defendant's failure to testify required reversal because of its obviously prejudicial effect. In *People* v. *Kyllingstad* (1978) 85 Cal.App.3d 562 [149 Cal.Rptr. 637], there were time gaps in an alibi defense which could only have been explained by the defendant's testimony. (*Id.*, at p. 570.) In other cases, the respective courts were totally uninformed of defenses or defensive possibilities which might plausibly have been forthcoming if the accused had taken the stand. (E.g., *People* v. *Spearman, supra*, 25 Cal.3d 107 at p. 118; *People* v. *Fries, supra*, 24 Cal.3d 222 at p. 233; *People* v. *Nelson* (1976) 63 Cal.App.3d 11, 23 [133 Cal.Rptr. 552].) In contrast, appellant's alibi defense was fully presented to the jury and his own testimony was not essential to it. Any detrimental effect of his failure to testify was therefore insignificant. No abuse of discretion has been shown relative to the fourth *Beagle* factor.

### *The Instruction on Flight*

 Over defense objection, the trial court gave CALJIC No. 2.52 (Flight After Crime).[3] In ruling that there was sufficient evidence to support the instruction, the court apparently accepted the prosecutor's citation of three instances of conduct showing flight: (1) the robbers had fled the scene of the crimes, (2) appellant had made statements to Ms. Schneider about his going to Mexico, and (3) defense witness Payne had testified that appellant and his wife moved out of the area shortly after October 22, 1977. None of these asserted grounds justified the instruction on flight, for the following reasons:

(1) The fact that the perpetrators fled the scene of the crime cannot warrant an instruction on flight where identity is a contested issue. Flight is relevant because it is a factor "tending to connect an accused with the commission of an offense." (*People* v. *Moore* (1963) 211 Cal. App.2d 585, 600 [27 Cal.Rptr. 526].) The fact that a robber fled the

---

[3]This instruction, which is mandated in every case "where evidence of flight of a defendant is relied upon as tending to show guilt" (§ 1127c), was given to the jury as follows: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in determining the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine."

scene is of no assistance to a jury where the defendant does not dispute that all elements of the crime were present but denies that he was the robber. This is true because the instruction becomes relevant only if the sole contested issue in the case—the defendant's identity as the robber —is assumed. Even if the robber's flight tends to show his (the robber's) guilt, this is immaterial unless the jury believes that the defendant is the robber. If such is the case, there is no need to "connect" him with the crime any further.

It has often been stated that a flight instruction which assumes "neither the guilt nor the flight of the defendant" is not erroneous. (See *People* v. *Cannady* (1972) 8 Cal.3d 379, 392 [105 Cal.Rptr. 129, 503 P.2d 585] [quoting *People* v. *Daener* (1950) 96 Cal.App.2d 827, 832-833 (216 P.2d 511)]; *People* v. *Hansen* (1933) 130 Cal.App. 217, 221 [19 P.2d 993]; *People* v. *Forsythe* (1884) 65 Cal. 101, 104 [3 P. 402].) It may be inferred that an instruction on flight is improper if it *does* appear to assume such "guilt."

This is imported in *People* v. *Mora* (1956) 139 Cal.App.2d 266 [293 P.2d 522], although the reasoning of the court is not expressed. In that case, three robbers had fled after holding up a store. (*Id.*, at p. 269.) The three defendants each denied being among the robbers. (*Id.*, at p. 271.) The Court of Appeal held that a flight instruction was proper as to two of the defendants because the evidence showed that they had failed to return to their homes the day after the robbery and had spent the night elsewhere after learning that the police were looking for them. (*Id.*, at p. 274.) The court, however, went on to hold that it was error (although not prejudicial) to give the instruction as to the defendant Mora because there was no such evidence pertaining to him. (*Ibid.*) Insofar as the presently challenged instruction might have led the jury to conclude that the flight of the robber (whoever he was) was indicative of appellant's guilt, it was misleading.

(2) Appellant's statements about leaving for Mexico were insufficient to warrant an instruction on flight. Gail Schneider, the victim of the second robbery, testified that appellant had visited her at the Greyhound station while the proceedings against him were pending, and that "he wanted to know if he could borrow some money because earlier in the day he had talked about he was very unhappy with the court case and he...felt like leaving town and he had mentioned Mexico, and Dan and I had tried to talk him out of it....And then...the subject was just dropped."

While it is true that flight "requires neither the physical act of running nor the reaching of a far-away haven" (*People* v. *Cannady, supra,* 8 Cal.3d 379 at p. 391), it requires more than mere idle words or thoughts. There was no evidence that appellant actually *left* the jurisdiction. No case has been found or cited which indicates that statements alone may suffice to justify a flight instruction.

(3) Contrary to the prosecutor's characterization of the testimony by the witness Payne, the latter had *not* testified that appellant had moved out of the area shortly after the crime was committed. Payne did testify that appellant's wife had terminated her employment at the restaurant two days after the crime. Her reasons, according to Payne, were that appellant "had decided he couldn't find suitable employment here to support him and three of them and that he was leaving to get better employment and she was going with him. . . ." The prosecutor later asked Payne if he had a conversation with appellant's wife "about them moving out of the area." An objection to that question was sustained, and the inquiry ended.

Because the only evidence of flight which could have been relied upon by the prosecution was an inadmissible hearsay statement attributed to appellant's wife about his "leaving to get better employment," and there was no evidence that he had actually gone away, the record does not support the giving of CALJIC No. 2.52. Since the evidence relied on by the prosecution, "without more, cannot logically tend to support an inference of guilt," the instruction was given in error. (*People* v. *Watson* (1977) 75 Cal.App.3d 384, 403 [142 Cal.Rptr. 134].)

The error nevertheless does not appear to have been prejudicial. The instruction told the jury that the fact of flight, "if proved," might be considered with all other circumstances in determining guilt, and that the weight of such circumstance was for them to decide. (See CALJIC No. 2.52, quoted in fn. 3, *ante*.) In his argument to the jury, the prosecutor made only passing reference to appellant's statements about Mexico. The prosecutor did not argue that any of appellant's actions constituted flight showing guilt.

Appellant's contention that the instruction implied that there was other evidence of flight, which had not been disclosed to the jury, cannot be sustained in view of another instruction which told the jurors that their determination must be governed by the evidence *received at*

*trial* and not mere conjecture. If the jurors had followed CALJIC No. 2.52 literally, they would not have accorded any significant weight to so-called evidence of flight. It was therefore not reasonably probable that a result more favorable to appellant would have been reached if the instruction had been omitted. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

*Claimed "Coercion" of the Jury*

The jurors retired to deliberate at 11:20 a.m. on May 16, 1978. They returned at 2:57 p.m. and requested a rereading of the testimony given by Detective Fonda, Officer Harper and Gail Schneider concerning the Pleasant Hill robbery. The court told them that they were entitled to have the testimony reread, but informed them of the length of time required for each rereading.[4] They were then sent back to deliberate further. They returned with a verdict at 4:24 p.m., without having requested a rereading of testimony.

■ Appellant contends that the court's remarks, "even though reasonable, are properly characterized as jury coercion." Section 1138 provides, among other things, that when the jurors require information as to the testimony given, they *must* be furnished such information after being brought back into court from deliberating.

A fair reading of the comments (see fn. 4, *ante*) shows no violation of section 1138. They went no further than to inform the jurors of the

---

[4]"... [L]et me explain one thing to you and make sure you understand this, you are entitled to have the testimony of any or all of the witnesses read to you, and there is no written transcript but the reporter can read to you, after she has had an opportunity to prepare to do so.... However, many times I have found that jurors do not understand the length of time that would be involved in reading it and I thought I would explain it to you now.

"The reporter has checked her notes, and to read Detective Fonda's testimony would take about an hour and a half to two hours. To read Mr. Harper's testimony would take about three to three and a half hours. To read Miss Schneider's testimony would take one to one and a half hours. So you can see that if you add up those three you have got an awful lot of hours of testimony. Now that is not to say that you can't have that if that's what you need in your deliberations. I don't know if... you meant that with regard to Harper and Fonda that she just read what they said about count one, but I don't know how the reporter could take out of the testimony just that portion that related to count one and determine what might relate to the other counts as well. So the only thing I wanted to do at this point... was to let you know... how much time would be involved in this request. And what I am going to ask you to do is retire to the jury room and have a discussion as to what you need and then you write me another note and let me know and *whatever it is that the jury decides they need, that's what you're entitled to have if you need it....*" (Italics added.)

time involved in rereading the requested testimony, so that they could make a knowledgeable decision as to whether they desired to hear it. The court did not attempt to discourage a reading, and in fact emphasized that the jurors were "entitled" to have the testimony reread if they felt it was needed. (See *ibid.*)

The case therefore stands in sharp contrast to *People v. Butler* (1975) 47 Cal.App.3d 273 [120 Cal.Rptr. 647], and *People v. Litteral* (1978) 79 Cal.App.3d 790 [145 Cal.Rptr. 186], both of which involved outright refusals to comply with the jury's request. It is more analogous to *People v. Sprinkle* (1962) 201 Cal.App.2d 277 [19 Cal.Rptr. 804], where the trial court told the jury that "'unless you can pinpoint the request as to William Sprinkle's testimony any finer, we will have to read it all, and we will do that if you wish it, if it is important in your deliberations. . . .'" (*Id.*, at p. 282.) When the jurors were then sent back to decide what to do, they promptly returned with a guilty verdict. (P. 283.) The Court of Appeal rejected a claim of section 1138 error, finding "absolutely nothing which would indicate that these comments of the trial court could in any way be interpreted as having prejudiced the jury against the appellants." (*Ibid.*)

A similar result is indicated here. Because the trial judge stressed the facts that a rereading of testimony was both feasible and would be ordered if requested (see fn. 4, *ante*), his comments concerning the length of time involved cannot properly be characterized as "coercion." Appellant was not deprived of any substantial right in violation of section 1138.

### The Consecutive Sentences

■ Appellant contends that the trial judge erroneously failed to state his reasons for imposing consecutive sentences on counts one and two. The Attorney General replies that a statement of reasons was unnecessary because the record shows that the consecutive sentences were appropriate. Section 1170, subdivision (c), provides that "[t]he court shall state the reasons for its sentence choice on the record at the time of sentencing." A decision to impose consecutive rather than concurrent sentences is a "sentence choice" within the meaning of the statutory language. (Rule 405(f), Cal. Rules of Court; *People v. Walker* (1978) 83 Cal.App.3d 619, 622 [148 Cal.Rptr. 66].)

A Court of Appeal has recently held that a statement of reasons for consecutive sentences was unnecessary where the record showed that the defendant's crimes met all the criteria prescribed in rule 425 and there were no mitigating circumstances. (*People* v. *Blessing* (1979) 94 Cal.App.3d 835, 838-839 [155 Cal.Rptr. 780] [hg. den. July 25, 1979].) The probation report on appellant included a statement of reasons in support of a recommendation by the probation officer that consecutive sentences be imposed. In pronouncing sentence, the judge stated that he had "read and considered the probation report." *Blessing* is nevertheless distinguishable from the present case because several of the criteria listed in rule 425 militated in favor of the imposition of *concurrent* sentences: the crimes involved small amounts of money and were highly similar in nature, they were committed only an hour apart, they suggested only a "single period of aberrant behavior" (rule 425(a)(3)), and appellant confessed his involvement to the police. Without a statement of reasons by the court, we cannot ascertain why consecutive sentences were imposed in the face of these countervailing circumstances. "In order to assess whether judges are imposing like sentences in like situations (Pen. Code, § 1170.4), it is necessary for them to state on the record why a certain sentence has been selected (Pen. Code, §§ 1170, subd. (c), 1170.3). . . ." (*People* v. *Walker, supra*, 83 Cal.App.3d 619 at p. 622.) Remand for resentencing is required as ordered below.

The judgment of conviction is affirmed. The cause is remanded to the trial court with directions that appellant be resentenced consistent with the views expressed in this opinion.

Caldecott, P. J., and Poché, J., concurred.