Filed 8/29/13  P. v. Silva CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B243796 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA380566) |
| v. | |
| FRANK SILVA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John S. Fisher, Judge.  Affirmed as modified.

Derek Kowata, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

A jury convicted defendant, Frank Silva, of first degree murder.  (Pen. Code, § 187, subd. (a).) [1]  The jury further found defendant personally and intentionally discharged a firearm and proximately caused death to a person other than an accomplice. (§ 12022.53, subd. (d).)  We modify defendant's presentence custody credit.  We affirm the judgment in all other respects.

# II.  THE EVIDENCE

On the night of September 18, 2010, Ulysses Novoa, David Canales (the decedent) and Samuel Canales, were working as disc jockeys at a rave party.  The party was held in an industrial area of Boyle Heights.  Samuel was David's cousin.  In addition to working as a disc jockey, David[2] was selling nitrous oxide balloons.  He filled the balloons from a nitrous oxide tank.  When inhaled, nitrous oxide produces a very short intoxicating effect. Defendant approached David and asked about the price for the balloons.  David told defendant two balloons cost $5.  Defendant said the price was too expensive.  He walked away.  Defendant returned 15 or 20 minutes later.  There were five or six males with him. Again defendant asked David about the price.  David said he had lowered the price to three balloons for $5.  Defendant said it was still too expensive.  Defendant said something else.  In response David nodded or shook his head.  Defendant turned as if to leave, then pulled out a gun and shot David.  Defendant picked up the nitrous oxide tank and walked away with his friends.  Defendant and David were standing face-to-face when defendant shot David in the chest.  David died as a result of the gunshot wound.

---

[1]  Further statutory references are to the Penal Code except where otherwise noted.

[2]  For the sake of clarity, we refer to members of the Canales family by their first names.

Samuel saw Hector Zamora, a tagging crew member, posting graffiti at the party. Mr. Zamora regularly posted graffiti. Initially, Samuel identified Mr. Zamora as the person who fired the shot. Police officers detained Mr. Zamora and booked him for murder. He was held on $1 million bail. However, officers searched Mr. Zamora's home and found no evidence connecting him to the crime. Mr. Zamora was never charged with the murder. During a post-arrest interview, Mr. Zamora told law enforcement officers they should be looking at defendant for David's murder. Police officers subsequently showed Samuel a photographic lineup that included defendant's picture. Samuel realized he had originally erred in his identification. As noted, Samuel originally identified Mr. Zamora as the gunman. Samuel changed his mind immediately upon being shown the photographic lineup that included defendant's picture. Samuel was 100 percent certain of his new identification. At trial, Mr. Zamora admitted he was at the party and had been tagging there. Mr. Zamora said defendant was also at the party. Tagging found at the party's location included defendant's moniker. Mr. Zamora denied writing defendant's moniker there. Mr. Zamora denied shooting David. Mr. Zamora said he did not witness the shooting.

Emely Barrera and Veronica Ovanda also saw Mr. Zamora tagging at the party. They asked him to tag their nicknames. Ms. Barrera saw a man leaving the party carrying a nitrous oxide tank. That man was not Mr. Zamora.

The trial court found Robert Lopez was unavailable as a witness at trial. His preliminary hearing testimony was read into the record. Mr. Lopez attended the party with Mr. Zamora. Mr. Lopez saw Mr. Zamora tagging there. Mr. Lopez also saw defendant at the party. In addition, Mr. Lopez saw defendant's girlfriend at the party.

Mr. Zamora and Mr. Lopez told law enforcement officers that defendant drove a white Toyota Camry. Defendant traveled to and from the party in a white Toyota Camry. A white Toyota Camry was found inside the gates at defendant's family's home. Three nitrous oxide tanks also were found at defendant's home. Ms. Barrera, Ms. Ovanda, and Mr. Novoa each identified one of those tanks as the tank David had used at the party. Mr. Novoa was not 100 percent certain about the identification. In addition, at the time

3

of his arrest, defendant was wearing sneakers that matched those worn by the person who fired the fatal shot.

Defendant's mother was the sole witness for the defense. She testified the three nitrous oxide tanks found on her property, where defendant lived, had been there for several years. She did not know how they had gotten there.

## III. DISCUSSION

### A. Recorded Testimony

Defendant contends it was prejudicial error and a violation of his constitutional rights to admit Mr. Lopez's preliminary hearing testimony. Defendant asserts the prosecution failed to demonstrate good faith efforts to locate Mr. Lopez. We conclude the prosecution met its burden.

Former testimony is admissible in a trial against a criminal defendant when the witness is unavailable. (Evid. Code, § 1291, subd. (a)(2).) However, the prosecution must have exercised reasonable diligence in attempting to locate the missing witness. (Evid. Code, § 240, subd. (a)(5).) Under federal constitutional law, before a trial court can introduce recorded testimony of an unavailable witness, the prosecution must demonstrate it made a good faith effort to secure the witness's presence at trial. (*Barber v. Page* (1968) 390 U.S. 719, 725; *People v. Fuiava* (2012) 53 Cal.4th 622, 675; *People v. Bunyard* (2009) 45 Cal.4th 836, 849.) Under California law, the statutory test is whether the prosecution has shown reasonable or due diligence in attempting to locate the witness. (Evid. Code, § 240, subd. (a)(5); *People v. Fuiava, supra,* 53 Cal.4th at p. 675; *People v. Bunyard, supra,* 45 Cal.4th at p. 849.) In *People v. Smith* (2003) 30 Cal.4th 581, 609, our Supreme Court held: "The constitutional and statutory requirements are 'in harmony.' (*People v. Enriquez* [(1977) 19 Cal.3d 221,] 235[, disapproved on another point in *People v. Cromer* (2001) 24 Cal.4th 889, 901, fn. 3].)" (Accord, *People v. Valencia* (2008) 43 Cal.4th 268, 291-292.) Our Supreme Court has further held: "When

the requirements of Evidence Code section 1291 are met, 'admitting former testimony in evidence does not violate a defendant's right of confrontation under the federal Constitution. [Citations.]' (*People v. Mayfield* (1997) 14 Cal.4th 668, 742.)" (*People v. Wilson* (2005) 36 Cal.4th 309, 340; accord, *People v. Friend* (2009) 47 Cal.4th 1, 67.)

The proponent of prior recorded testimony has the burden of demonstrating by competent evidence that the witness is unavailable. (*People v. Smith, supra,* 30 Cal.4th at p. 609; *People v. Price* (1991) 1 Cal.4th 324, 424.) Our Supreme Court has explained the meaning of reasonable or due diligence in this context: "'The term "reasonable diligence" or "due diligence" under Evidence Code section 240, subdivision (a)(5) "'connotes persevering application, untiring efforts in good earnest, efforts of a substantial character. [Citations.]'"" (*People v. Wilson, supra,* 36 Cal.4th at p. 341, quoting *People v. Cromer*, *supra,* 24 Cal.4th at p. 904 ['reasonable diligence same as due diligence'].) 'Considerations relevant to this inquiry include the timeliness of the search, the importance of the proffered testimony, and whether leads of the witness's possible location were competently explored.' (*People v. Wilson, supra,* 36 Cal.4th at p. 341.)" (*People v. Friend, supra,* 47 Cal.4th at p. 68.) Where, as here, the facts are undisputed, we independently review the trial court's due diligence determination. (*People v. Fuiava, supra,* 53 Cal.4th at p. 675; *People v. Thomas* (2011) 51 Cal.4th 449, 503.)

Robert Lopez was a reluctant witness who was subpoenaed and testified at the preliminary hearing on April 29, 2011. One year later, Detective Jose Rios attempted to subpoena Mr. Lopez to testify at trial. The trial commenced on April 16, 2012. On February 27, 2012, Detective Rios obtained a subpoena for Mr. Lopez to testify at trial. Shortly thereafter, he went to Mr. Lopez's last known Los Angeles address. Detective Rios spoke with a woman who said defendant was not living there. She promised to give Detective Rios's contact information to Mr. Lopez's father. Mr. Lopez's father contacted Detective Rios shortly thereafter. The father agreed to attempt to contact Mr. Lopez. The father thought Mr. Lopez "might" be living with an aunt in the South Bay area. The following day, in the first week of March 2012, Mr. Lopez's father spoke to Detective Rios. The father had been unable to contact Mr. Lopez at the aunt's residence. Detective

5

Rios had 10 subsequent conversations with Mr. Lopez's father. The father was unable to locate Mr. Lopez. The father did not know where Mr. Lopez was working or where he was living.

Investigator Thomas Snook went to Mr. Lopez's last known address on April 17, 2012, one day after the present trial commenced. The address was taken from Mr. Lopez's very recent arrest record. Investigator Snook spoke to Mr. Lopez's stepmother, identified only as Liz. Liz said Mr. Lopez was not living at the address. She did not know where he was living. Mr. Lopez was working someplace in the City of Carson, but his stepmother did not know where. She gave Investigator Snook a cellular telephone number for Mr. Lopez. Investigator Snook called the number and spoke to Mr. Lopez. Mr. Snook testified, "I told him I needed to talk to him regarding a case that he was a witness on." Mr. Lopez was very reluctant to talk. Mr. Lopez said he was on a break and needed to return to work. Mr. Lopez refused to give Investigator Snook a home or work address. Mr. Lopez promised to telephone Investigator Snook later in the day. However, Investigator Snook never received a return telephone call from Mr. Lopez. Investigator Snook left two further voice messages for Mr. Lopez. Mr. Lopez did not return the calls. In an effort to determine Mr. Lopez's place of employment, Investigator Snook sent a facsimile request for information to the State of California, Employment Development Department. Investigator Snook had not yet received any information in return. Investigator Snook testified, "[W]hen I talked to [Mr. Lopez] he seemed to be fine other than just hesitant to give me any information as to where he was."

We agree with the trial court's assessment that the prosecution demonstrated due diligence. Detective Rios and Investigator Snook took substantial good faith steps to locate Mr. Lopez through his family members. Both visited defendant's last known address and spoke with a family member. At Detective Rios's request, the father attempted unsuccessfully to locate Mr. Lopez. Investigator Snook secured Mr. Lopez's cellular telephone number. Investigator Snook spoke to Mr. Lopez. Ultimately, however, Mr. Lopez was uncooperative. Investigator Snook was unable to locate

Mr. Lopez in order to serve him with the subpoena. No leads to Mr. Lopez's location were left unexplored. Further, Mr. Lopez's testimony was not crucial to the prosecution's case. Mr. Lopez's testimony corroborated other evidence that defendant was present at the party and that he drove a white car. But Mr. Lopez was not an eyewitness to the shooting. Under these circumstances, the trial court did not err in concluding Mr. Lopez was unavailable as a witness. (See, e.g., *People v. Wilson, supra,* 36 Cal.4th at pp. 341-342; *People v. Davis* (1981) 29 Cal.3d 814, 826-827.) This was not a case, as in *People v. Louis* (1986) 42 Cal.3d 969, 991, in which the unavailable witness was critical to the prosecution and known to be both unreliable and of suspect credibility. Therefore, no duty arose to ensure that Mr. Lopez did not become absent.

Any error was harmless beyond a reasonable doubt. In addition to Mr. Lopez, Mr. Zamora and Samuel both placed defendant at the party. Defendant's gang moniker had been tagged at the location. Mr. Zamora was not the person who left the party carrying the victim's nitrous oxide tank. Samuel was standing two feet away from David when defendant fired the fatal shot. Samuel identified defendant as the gunman with 100 percent certainty. Evidence linking defendant to the crime was found at his house. When arrested, he was wearing sneakers that matched the description of the person who shot David. With the exception of Samuel's recanted identification, there was no evidence linking Mr. Zamora to the murder.

### B. CALCRIM No. 376

The prosecution concedes the trial court erroneously instructed the jury with CALCRIM No. 376 concerning possession of recently stolen property as evidence of a theft crime.[3] (Cf. *People v. Moore* (2011) 51 Cal.4th 1104, 1130 [CALJIC No. 2.15][4];

---

[3] CALCRIM No. 376 states: "If you conclude that the defendant knew (he/she) possessed property and you conclude that the property had in fact been recently (stolen/extorted), you may not convict the defendant of *<insert crime>* based on those facts alone. However, if you also find that supporting evidence tends to prove (his/her)

7

*People v. Gamache* (2010) 48 Cal.4th 347, 375; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 101; *People v. Prieto* (2003) 30 Cal.4th 226, 248-249.) CALCRIM No. 376 should be limited to theft-related offenses. (Cf. *People v. Moore, supra,* 51 Cal.4th at p. 1130; *People v. Gamache, supra,* 48 Cal.4th at p. 375; *People v. Coffman and Marlow, supra,* 34 Cal.4th at p. 101; *People v. Prieto, supra,* 30 Cal.4th at pp. 248-249.) The error is in instructing, in the context of a nontheft crime, that if the defendant is in possession of stolen property, corroboration of his or her guilt need only be slight. (*People v. Moore, supra,* 51 Cal.4th at p. 1131; *People v. Prieto, supra,* 30 Cal.4th at pp. 248-249.) Here, however, defendant agreed that the instruction should be given. We assume defendant's failure to object to the instruction did not forfeit his claim. (§ 1259; *People v. Moore, supra,* 51 Cal.4th at p. 1130; *People v. Kelly* (2007) 42 Cal.4th 763, 791.) The error was not, however, of constitutional dimension; the error was one of state law only. (*People v. Moore, supra,* 51 Cal.4th at pp. 1130, 1131; *People v. Gamache, supra,* 48

guilt, then you may conclude that the evidence is sufficient to prove (he/she) committed *<insert crime>*. [¶] The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove (his/her) guilt of *<insert crime>*. [¶] [You may also consider whether *<insert other appropriate factors for consideration>*.] [¶] Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt."

   **4**  CALJIC No. 2.15 is similar to CALCRIM No. 376. CALJIC No. 2.15 provides: "If you find that a defendant was in [conscious] possession of recently [stolen] [extorted] property, the fact of that possession is not by itself sufficient to permit an inference that the defendant is guilty of the crime of []. Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt. [¶] As corroboration, you may consider [the attributes of possession—time, place and manner,] [that the defendant had an opportunity to commit the crime charged,] [the defendant's conduct,] [[his] [her] false or contradictory statements, if any,] [and] [or] [other statements [he] [she] may have made with reference to the property] [a false account of how [he] [she] acquired possession of the stolen property] [any other evidence which tends to connect the defendant with the crime charged]."

8

Cal.4th at p. 376.) The error is subject to review under the miscarriage of justice test set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Moore, supra,* 51 Cal.4th at pp. 1130; *People v. Gamache, supra,* 48 Cal.4th at p. 376; see *People v. Coffman and Marlow, supra,* 34 Cal.4th at p. 101.) Moreover, the error was not prejudicial. The majority of the instruction was an entirely accurate statement of law even as applied to murder charges. (*People v. Moore, supra,* 51 Cal.4th at pp. 1130-1131.) It did not reduce or shift the burden of proof, permit the jury to disregard defense evidence, or permit the jury to draw an impermissible inference of guilt. (*People v. Moore, supra,* 51 Cal.4th at pp. 1131-1133; *People v. Gamache, supra,* 48 Cal.4th at p. 376; *People v. Parson* (2008) 44 Cal.4th 332, 355-356; *People v. Prieto, supra,* 30 Cal.4th at p. 248.) And it is not reasonably probable the jury would have reached a verdict more favorable to defendant absent the CALCRIM No. 376 instruction. As discussed above, Samuel, an eyewitness to the shooting, positively identified defendant as the man who shot David. There was substantial evidence corroborating defendant's presence at the party, including that the nitrous oxide tank was found at his home. His gang moniker had been tagged at the party's location. When he was arrested, he was wearing sneakers matching the description of the gunman. No doubt Samuel initially named Mr. Zamora as the person who shot David. But Samuel realized he was mistaken. This occurred when Samuel saw defendant's photograph in a lineup. There was no other evidence linking Mr. Zamora to the crime.

## C. CALCRIM No. 372

Defendant asserts it was prejudicial error to instruct the jury on flight as consciousness of guilt pursuant to CALCRIM No. 372 because the killer's identity was in issue. That contention is without merit. (*People v. Avila* (2009) 46 Cal.4th 680, 710; *People v. Jones* (1991) 53 Cal.3d 1115, 1144-1145; *People v. Pensinger* (1991) 52 Cal.3d 1210, 1245; *People v. Mason* (1991) 52 Cal.3d 909, 942-943 & fn. 13; cf. *People v. Rogers* (2009) 46 Cal.4th 1136, 1170, fn. 19.) There was evidence defendant fled from

9

the party immediately after shooting the victim.  Under these circumstances, it was proper to instruct on flight as consciousness of guilt.  (*People v. Avila, supra,* 46 Cal.4th at p. 710; *People v. Jones, supra,* 53 Cal.3d at pp. 1144-1145; *People v. Pensinger, supra,* 52 Cal.3d at p. 1245; *People v. Mason, supra,* 52 Cal.3d at pp. 942-943 & fn. 13; cf. *People v. Rogers, supra,* 46 Cal.4th at p. 1170, fn. 19.)  In *Mason*, our Supreme Court specifically disapproved *People v. Anjell* (1979) 100 Cal.App.3d 189, on which defendant relies.  (*People v. Mason, supra,* 52 Cal.3d at p. 943, fn. 13.)  There was no due process violation.  (*People v. McWhorter* (2009) 47 Cal.4th 318, 377; *People v. Mendoza* (2000) 24 Cal.4th 130, 179-180.)

## D.  Presentence Custody Credit

The trial court failed to award presentence custody credit.  The abstract of judgment reflects credit for 540 days.  Defendant was arrested on February 1, 2011, and sentenced on July 25, 2012.  Therefore, the correct calculation is 541 days.  (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48; *People v. Morgain* (2009) 177 Cal.App.4th 454, 469.)

At trial, Detective Rios testified defendant was arrested on September 30, 2010.  Defendant seeks additional presentence credit based on Detective Rios's testimony.  However, the probation report states defendant was arrested on February 1, 2011.  The probation report further reflects defendant was initially booked on a parole violation and later rearrested for murder and detained in custody.  The preliminary hearing commenced on April 29, 2011.  There is substantial evidence defendant was arrested on February 1, 2011, as reflected in the probation report.  We modify the judgment to award 541 days of presentence custody credit.

## IV. DISPOSITION

The judgment is modified to award defendant 541 days of presentence custody credit. The judgment is affirmed in all other respects. Upon remittitur issuance, the superior court clerk is to prepare an amended abstract of judgment reflecting 541 days of presentence custody credit and deliver a copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P.J.


We concur:



MOSK, J.



KRIEGLER, J.


11