Filed 10/10/18

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> EDGAR GUTIERREZ, <br><br>     Defendant and Appellant. | E068135 <br><br> (Super.Ct.No. BAF1600912) <br><br> OPINION |

APPEAL from the Superior Court of Riverside County. W. Charles Morgan, Judge. (Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Benjamin B. Kington, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and A. Natasha Cortina,

---

    \*      Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.

Amanda E. Casillas, and Craig H. Russell, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Edgar Gutierrez walked up to a stranger and demanded the keys to his car. When the victim did not turn them over, defendant said, in Spanish, "[G]ive me the keys or it's going to be fucked up." The victim called 911, and defendant left. As a result, defendant was convicted of attempted carjacking. (Pen. Code, §§ 215, subd. (a), 664.)

Defendant claimed that he merely asked the victim if he had keys and could give him a ride. He denied threatening the victim; he claimed that he spoke Spanish poorly and the victim must have misunderstood him.

Defendant now contends that the trial court erred by:

1. Allowing the prosecution to impeach him with the facts underlying his prior felony conviction.

2. Discouraging the jury from requesting a readback of testimony.

We find no error. Hence, we will affirm.

I

THE PROSECUTION'S USE OF THE FACTS UNDERLYING

DEFENDANT'S PRIOR FELONY CONVICTION TO IMPEACH HIM

Defendant contends that the trial court erred by allowing the prosecution to impeach him with the facts underlying his 2011 conviction for felony evading.

2

A.     *Additional Factual and Procedural Background.*

Defendant moved in limine to preclude the prosecution from introducing evidence of his prior convictions to impeach him.  He argued that the priors were more prejudicial than probative.  Alternatively, he argued that the trial court should "sanitize" the priors by excluding evidence of "specific underlying facts."  The trial court denied the motion.

Defense counsel then once again asked the trial court to order that each prior be referred to only as "a felony conviction."  The prosecutor indicated that he intended to impeach defendant with his 2008 conviction for robbery and his 2011 conviction for felony evading.  He added that, at the same time as the felony evading conviction, defendant was also convicted of "misdemeanor auto theft and misdemeanor receiving a stolen vehicle" — "evading in a stolen car."

The trial court ruled:  "[T]he People may impeach him with his [robbery] conviction [and with] his [felony evading] conviction.  And they may ask him, isn't it true you took a vehicle . . . without the owner's permission."

Accordingly, on direct, defendant admitted prior convictions for robbery and for evading a police officer.  On cross, the prosecutor asked:

"Q.  . . . Counsel just said evading in 2011, but that was actually a felony reckless evading of a police officer; is that right?

"A.  It was.

"Q.  And in that same — or around that same period of time, you also engaged in knowingly having a stolen car, right?

"A. Well, no. I took a car without the owner's consent.

"Q. That's basically what I'm asking, yes?

"A. Okay. Yes."

The trial court instructed the jury with CALCRIM No. 316, as follows: "If you find that a witness has committed a crime or other misconduct, you may consider that fact only in evaluating the credibility of the witness's testimony. The fact that a witness may have committed a crime or other misconduct does not necessarily destroy or impair a witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable."

B.      *Discussion.*

A prior felony conviction involving moral turpitude is admissible to impeach a witness. (Cal. Const., art. I, § 28, subd. (f)(4); Evid. Code, § 788; *People v. Anderson* (2018) 5 Cal.5th 372, 407; *People v. Amanacus* (1875) 50 Cal. 233, 234-235.)

It has long been the rule that "'[t]he scope of inquiry when a criminal defendant is impeached with evidence of a prior felony conviction does not extend to the facts of the underlying offense.' [Citation.]" (*People v. Shea* (1995) 39 Cal.App.4th 1257, 1267.) "Evidence of prior felony convictions offered for this purpose is restricted to the name or type of crime and the date and place of conviction. [Citations.]" (*People v. Allen* (1986) 42 Cal.3d 1222, 1270.)

It also used to be the rule that other specific instances of misconduct, including a prior misdemeanor conviction, were not admissible to impeach. (Evid. Code, § 787;

*People v. Lent* (1975) 15 Cal.3d 481, 484.) In 1992, however, our Supreme Court held that the adoption of the "Truth-in-Evidence" provision of the California Constitution (Cal. Const., art. I, § 28, subd. (f)(2)) abrogated this rule in criminal cases, so that evidence of past misconduct is admissible to impeach a witness, provided it involves moral turpitude and thus is relevant to show a willingness to lie. (*People v. Wheeler* (1992) 4 Cal.4th 284, 292, 295-296 (*Wheeler*).) This includes the misconduct underlying a prior misdemeanor conviction. (*Id*. at p. 292.) However, the prior misdemeanor conviction itself remains inadmissible, because it is hearsay. (*Id*. at pp. 288, 297-300.)

The admission for impeachment purposes of either (1) a prior felony conviction or (2) other prior misconduct is subject to the trial court's discretion to exclude evidence as more prejudicial than probative under Evidence Code section 352. (*People v. Anderson*, *supra*, 5 Cal.5th at p. 407 [prior felony conviction]; *People v. Clark* (2011) 52 Cal.4th 856, 931 [other prior misconduct].)

The rule that the conduct underlying a felony conviction is inadmissible to impeach ultimately derives from Code of Civil Procedure former section 2051, which provided that, other than a prior felony conviction, evidence of particular wrongful acts were inadmissible to attack or support a witness's credibility. (*People v. Amanacus*, *supra*, 50 Cal. at pp. 234-235.) In 1963, when the Evidence Code was enacted, the rule was recodified in Evidence Code section 787. Under *Wheeler*, however, the Truth-in-Evidence provision trumps Evidence Code section 787, subject only to the trial court's discretion to exclude evidence under Evidence Code section 352. The inescapable

5

conclusion is that now, the conduct underlying a felony conviction is admissible when it is relevant to impeach a witness, unless the trial court finds that it is more prejudicial than probative. Consistent with this view, in *People v. Clark* (2011) 52 Cal.4th 856, the Supreme Court stated — citing *Wheeler* and the Truth-in-Evidence provision — "A witness may be impeached with any prior conduct involving moral turpitude *whether or not it resulted in a felony conviction,* subject to the trial court's exercise of discretion under Evidence Code section 352. [Citations.]" (*Id.* at p. 931, fn. omitted, italics added.)

Defendant argues that, despite *Wheeler*, the conduct underlying a felony conviction, when offered to impeach, is still inadmissible. He cites *People v. Casares* (2016) 62 Cal.4th 808, which stated: "Under California law, the right to cross-examine or impeach the credibility of a witness concerning a felony conviction does not extend to the facts underlying the offense. [Citations.]" (*Id.* at p. 830.)

The statement in *Casares*, however, was dictum. There, it was the defendant who sought to introduce evidence of the conduct underlying a witness's felony conviction. The witness had been convicted of murder, and this conviction was properly admitted to impeach him. Defense counsel also asked him, however, if he used a knife to commit the murder. The prosecution's objection to this was sustained. (*People v. Casares*, *supra*, 62 Cal.4th at p. 829.) On appeal, the defendant argued that the evidence was relevant to show that the witness may have committed the charged crimes, as one of the victims had been stabbed with a knife. The Supreme Court held that this was inadmissible third-party culpability evidence. (*Ibid.*) The defendant was not trying to introduce the conduct

6

underlying the impeaching felony as evidence of dishonesty, and the use of the knife did not tend to show dishonesty. Thus, the court had no occasion to consider whether the rule against admitting the facts underlying a felony conviction to impeach was still good law. And finally, the dictum conflicts with the court's earlier statement in *Clark*.

In many instances, the conduct underlying a felony adds nothing to the probative value of the felony, while at the same time it increases the prejudicial effect. This is true when the underlying conduct does not show dishonesty. For example, in *Casares*, the fact that the witness had a prior conviction for murder shed some light on his willingness to do evil, and therefore on whether he might lie on the stand. The additional fact that he committed the murder with a knife had no additional bearing on his honesty. However, it would tend to repulse the jury and to taint its evaluation of his testimony.

The same is true when the elements of the prior felony already show dishonesty. For example, the bare fact that a witness has a prior conviction for robbery is sufficient to show dishonesty. Additional details — e.g., regarding the nature of the force or fear involved or the nature of the property taken — are likely to be more prejudicial than probative.

We therefore accept — in these situations — that when a prior felony conviction has been introduced to impeach, ordinarily the trial court should exclude evidence of the underlying conduct. Moreover, we accept — again, in these situations — that the Truth-in-Evidence provision, which expressly preserves Evidence Code section 352, does not change this outcome.

Here, by contrast, the conduct underlying the felony added significant probative value. Defendant's prior felony conviction was for evading a police officer in violation of Vehicle Code section 2800.2. This is a crime of moral turpitude. (*People v. Dewey* (1996) 42 Cal.App.4th 216, 221-222.) Otherwise, however, felony evading does not particularly show dishonesty. The underlying fact that defendant took a car without the owner's consent substantially augmented the showing of dishonesty.

Defendant nevertheless argues that the trial court abused its discretion under Evidence Code section 352, for two reasons.

First, defendant argues that his 2008 robbery conviction was already evidence of dishonesty, so that the evidence of his taking of a car was cumulative. The trial court could reasonably see things differently. "[E]vidence that a defendant committed a series of crimes is more probative of his credibility than a 'single lapse.' [Citation.]" (*People v. Clark*, *supra*, 52 Cal.4th at p. 933.)

Second, defendant argues that his taking of a car was prejudicially similar to the charged crime. "'Although the similarity between the prior convictions and the charged offenses is a factor for the court to consider when balancing probative value against prejudice, it is not dispositive.' [Citation.]" (*People v. Edwards* (2013) 57 Cal.4th 658, 722.) For example, in *People v. Gutierrez* (2002) 28 Cal.4th 1083, the Supreme Court held that a prior conviction for assault with a deadly weapon on a peace officer was admissible to impeach the defendant, even though he was charged with attempted murder of a police officer. (*Id*. at p. 1139.)

8

Here, the trial court instructed the jury that it could consider the prior misconduct only in evaluating defendant's believability. "Any prejudice that the challenged information may have threatened must be deemed to have been prevented by the court's limiting instruction to the jury. We presume that jurors comprehend and accept the court's directions. [Citation.]" (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.)

We therefore conclude that the trial court did not err by allowing the prosecution to impeach defendant with evidence that he took a car without the owner's permission.

II

JURY INSTRUCTIONS REGARDING READBACKS OF TESTIMONY

Defendant contends that the trial court improperly discouraged the jury from requesting a readback.

A.     *Additional Factual and Procedural Background.*

Immediately after the jurors were sworn, the trial court pointed out to them that they had notebooks. It told them that they had no obligation to take notes, but that doing so would help them remember the evidence. It then said:

"[E]verything that is said in the courtroom is captured by the court reporter. It's called a verbatim record. . . . And so obviously all the testimony that you hear is going to be captured in that verbatim record. And as you go out and deliberate, if you hit a sticky patch, and to help you get through that, if you want some testimony read to you, you have a right to have it read back to you so that maybe that will push you through that sticky patch. I frown on that request. And I say that to every jury that I have ever been

9

associated with. He just said we have that right, now he frowns on it. What's going on here?

"Well, when you're out deliberating, I'm going to get something else to do. . . . And that case is entitled to a verbatim record, and my court reporter is going to be taking down everything we say in that case. So when you make a request, then we have to stop doing what we're doing in that other matter, she has to get her rough notes, put it in a booklet-type form, then physically read it to you. So make no mistake, we're here to help. When you're out deliberating, if you need it, you're going to get it. But if I tell you now the value of you taking your own notes on what you think is important, maybe we can avoid that later as you're out deliberating."

At the close of trial, the trial court instructed the jury: "The court reporter has made a record of everything that was said during the trial. If you decide it is necessary, you may ask that the court reporter's record be read to you." (CALCRIM No. 222.)

The jury took three hours and 10 minutes to reach a verdict. (This may have included a break for lunch.) The jurors did not request any readbacks.

B. *Discussion*.

Penal Code section 1138, as relevant here, provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, . . . they must require the officer to conduct them into court. Upon being brought into court, the information required must be given . . . ."

10

"[Penal Code s]ection 1138 gives deliberating jurors the right to rehear testimony . . . on request.  [Citation.]  It also implicates a defendant's fair trial rights.  [Citations.]" (*People v. Solomon* (2010) 49 Cal.4th 792, 824.)

A refusal of a reasonable request for a readback is error.  (*People v. Litteral* (1978) 79 Cal.App.3d 790, 794-797; *People v. Butler* (1975) 47 Cal.App.3d 273, 280-284.) However, "[m]erely informing the jury of the time it may take for rehearing testimony is not impermissible jury coercion.  [Citation.]"  (*People v. Hillhouse* (2002) 27 Cal.4th 469, 506-507.)

For example, in *People v. Anjell* (1979) 100 Cal.App.3d 189, disapproved on other grounds in *People v. Mason* (1991) 52 Cal.3d 909, 942-943, the jurors requested a readback of three witnesses' testimony.  (*People v. Anjell*, *supra*, at p. 202.)  The trial court responded:  "'[Y]ou are entitled to have the testimony of any or all of the witnesses read to you . . . .  However, many times I have found that jurors do not understand the length of time that would be involved in reading it and I thought I would explain it to you now.

"'The reporter has checked her notes, and to read Detective Fonda's testimony would take about an hour and a half to two hours.  To read Mr. Harper's testimony would take about three to three and a half hours.  To read Miss Schneider's testimony would take one to one and a half hours.  So you can see that if you add up those three you have got an awful lot of hours of testimony.  Now that is not to say that you can't have that if that's what you need in your deliberations. . . .  And what I am going to ask you to do is

retire to the jury room and have a discussion as to what you need and then you write me another note and let me know and *whatever it is that the jury decides they need, that's what you're entitled to have if you need it.* . . .'" (*People v. Anjell*, *supra*, 100 Cal.App.3d at p. 202, fn. 4, italics in original.)

The appellate court held: "A fair reading of the comments . . . shows no violation of [Penal Code] section 1138. They went no further than to inform the jurors of the time involved in rereading the requested testimony, so that they could make a knowledgeable decision as to whether they desired to hear it. The court did not attempt to discourage a reading, and in fact emphasized that the jurors were 'entitled' to have the testimony reread if they felt it was needed. [Citation.]" (*People v. Anjell*, *supra*, 100 Cal.App.3d at pp. 202-203.) "Because the trial judge stressed the facts that a rereading of testimony was both feasible and would be ordered if requested . . . , his comments concerning the length of time involved cannot properly be characterized as 'coercion.'" (*Id*. at p. 203.)

Similarly, in this case, the trial court truthfully explained that a readback was a somewhat time-consuming process that had an impact on other court business. Plainly its central point was that, if the jurors took notes diligently, they were less likely to *need* a readback. And while the court did say that it "frowned on" readback requests, because they were time-consuming, it never indicated that it would not honor them. To the contrary, it said repeatedly that a readback would be given if requested. It repeated this yet again in its final instructions.

"'A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant. [Citations.]' [Citation.]" (*People v. Solomon*, *supra*, 49 Cal.4th at p. 822.) Defendant has shown no reasonable likelihood that the challenged instructions dissuaded the jurors from requesting a readback.

### III

### DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ
P. J.

We concur:

MILLER
J.

CODRINGTON
J.

13