[Crim. No. 14657. Third Dist. Dec. 29, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT IVAN MASK, Defendant and Appellant.

## COUNSEL

Michael S. McCormick, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Doris A. Calandra and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ACKLEY, J.*—Defendant Robert Mask was convicted of a single count of residential burglary. (Pen. Code, § 459.) He was given a suspended

*Assigned by the Chairperson of the Judicial Council.

sentence and placed on five years probation. In this appeal, defendant contends the judgment should be reversed because the trial court erred when it instructed the jury they could draw adverse inferences from his failure to explain or deny prosecution evidence (CALJIC No. 2.62), when it gave an instruction that evidence of defendant's flight could be used to show his guilt (CALJIC No. 2.52) and when it failed to instruct the jury they must decide the guilt of defendant and his codefendant separately. (CALJIC No. 17.00.) We find no reversible error in defendant's contentions and affirm the judgment.

FACTS

Around midnight on November 28, 1984, Officer Gary Shelley of the Sacramento Police Department answered a call alerting him to a possible residential burglary in progress on Manorside Drive in Sacramento. Shelley went around the side of the house to watch the rear portion of the building and the backyard. The backyard was well lighted. While he stood there he saw two Black men leave the rear of the house. They appeared to be crouching furtively to avoid detection. Shelley watched the two men for several seconds and then yelled for them to stop. The two men immediately began running away through the backyard. Shelley heard them hitting various fences in their attempt to escape. Shelley and another officer, Officer Fife, had secured the perimeter of the block. They waited for additional officers to provide back-up.

A few minutes later other officers arrived with tracking dogs. The dogs followed the scent of the two suspects and led the officers through several yards on the block. In one yard they found a pair of gloves. In the next yard they found codefendant Tims lying next to a shed. Officer Shelley took him into custody. A short time later, one of the dogs led the officers to defendant hiding under a tree in another backyard. On the ground next to defendant the officer found another pair of gloves. The officer had no doubt the two men apprehended were the two he saw leaving the rear of the house, based upon their size, the clothes they wore and their faces.

When the two men were searched, five black plastic combs were found in defendant's coat pocket. The combs were attachments to hair clippers identical to ones found in the victim's backyard. Those clippers belonged to the victim and the "five or six" attachments were missing when he returned home. Also missing from the victim's residence was about $14 in nickles and dimes. Officer Shelley found $14.55 in nickles and dimes in the pocket of codefendant Tims.

## THE DEFENSE

Defendant testified his mother drove him to Tims's house at around 8 that evening. Tims was not home and defendant stayed there for 15 minutes. He then went on a bicycle to visit his cousin, who lived in the area of the burglary, about a mile away. He said he was carrying the clipper attachments because he planned to have his cousin cut his hair for an upcoming job interview. He said he formerly owned hair clippers but got rid of them when they developed a short; he kept only the attachments. When defendant arrived at his cousin's house, the house was vacant.

Defendant left there and proceeded on foot to the home of another cousin who lived six blocks away. He decided to take a shortcut through the backyards of residents along his path. Defendant stated that without taking the shortcuts, the six-block walk would ordinarily take him 20 to 25 minutes.

As defendant began his walk between cousins' houses, he saw police cars and dogs up the street. Defendant walked up the street a short distance and then hopped the fence as part of his shortcut. To avoid detection by either the residents of that house or the police, he walked along the fence line. He walked behind a tree where he remained for about one minute before a dog walked past him. Immediately after, a police officer flashed a light on him and told him to freeze and lie down. At that point, he was arrested.

## DISCUSSION

## I

Defendant first contends the trial court erred when it instructed the jury with CALJIC No. 2.62,[1] which informs the jury they may draw inferences unfavorable to the defendant from his failure to explain or deny evidence presented in the prosecution's case. (*People* v. *Saddler* (1979) 24 Cal.3d 671,

---

[1]CALJIC No. 2.62 provides: "In this case defendant has testified to certain matters. [¶] If you find that he failed to explain or deny any evidence against him introduced by the prosecution which he can reasonably be expected to deny or explain because of facts within his knowledge, you may take that failure in to consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may reasonably be drawn therefrom those unfavorable to the defendant are the more probable. [¶] In this connection, however, it should be noted that if a defendant does not have the knowledge that he would need to deny or to explain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain such evidence. [¶] The failure of a defendant to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt."

682 [156 Cal.Rptr. 871, 597 P.2d 130].) We hold the instruction was properly given.

██ The pertinence of CALJIC No. 2.62 depends upon the facts of the case. (*People* v. *Roehler* (1985) 167 Cal.App.3d 353, 393 [213 Cal. Rptr. 353].) If the defendant has not been asked a question calling for an explanation or a denial, as a matter of law the instruction may not be given. (*Id.,* at p. 392.) Additionally, if the defendant does not answer such a question because of some fact which precludes his knowledge of it (like an alibi which removes him from the scene), a denial of guilt is deemed to have been made. (*Id.,* at p. 393.) If he fully accounts for his whereabouts and denies the crime, the mere fact that defendant's story is contradicted by other prosecution evidence does not pave the way for giving the instruction, because contradiction is not by itself a failure to explain or deny. (*People* v. *Saddler, supra,* 24 Cal.3d at p. 682; *People* v. *Roehler, supra,* 167 Cal.App.3d at p. 393.) However, if the defendant tenders an explanation which, while superficially accounting for his activities, nevertheless seems bizarre or implausible, the inquiry whether he reasonably should have known about circumstances claimed to be outside his knowledge is a credibility question for resolution by the jury. (*People* v. *Roehler, supra,* 167 Cal.App.3d at pp. 393-394; *People* v. *Haynes* (1983) 148 Cal.App.3d 1117, 1120-1122 [196 Cal.Rptr. 450].) This is such a case.

██ Defendant offered an implausible explanation for his presence near the scene of the crime. He testified (without corroboration) that his mother drove him at 8 p.m. to the home of his codefendant Tims. Because Tims was not home, defendant left there after 15 minutes and went by bicycle to his cousin's house about a mile away. After discovering his cousin's house was unoccupied, he walked to another cousin's house six blocks away. On his way there, he saw the police investigating the burglary at around midnight. Even if we assume defendant took an inordinately long time in his travels, there are approximately three hours for which defendant was unable to account. Thus, his story was inherently implausible and the trial court did not err when it instructed the jury with CALJIC No. 2.62. (*People* v. *Roehler, supra,* 167 Cal.App.3d at pp. 393-394.)

## II

██ Defendant next argues the court erred when it instructed the jury with CALJIC No. 2.52,[2] which advises that the flight of a person immedi-

---

[2]CALJIC No. 2.52 provides: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine."

ately after the commission of a crime may be considered in deciding guilt or innocence. Defendant asserts such an instruction is improper where identity is the only issue contested at trial. Defendant is correct. (*People v. Malgren* (1983) 139 Cal.App.3d 234, 242 [118 Cal.Rptr. 569]; *People v. Moringlane* (1982) 127 Cal.App.3d 811, 821 [179 Cal.Rptr. 726]; *People v. Salazar* (1980) 108 Cal.App.3d 992, 997-998 [167 Cal.Rptr. 38]; *People v. Guillebeau* (1980) 107 Cal.App.3d 531, 546 [166 Cal. Rptr. 45]; *People v. Anjell* (1979) 100 Cal.App.3d 189, 199-202 [160 Cal.Rptr. 669].)

Such an error, however, does not require reversal if, absent the erroneous instruction, a more favorable result is not reasonably probable. (*People v. Anjell, supra,* 100 Cal.App.3d at pp. 201-202, citing *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) In view of the prosecution's strong case, we conclude a more favorable result is not reasonably probable. Defendant and codefendant Tims were found shortly after the burglary hiding near the crime scene in the bushes of private backyards. They had in their possession the only items stolen in the burglary. Defendant presented an utterly implausible account of his presence there and of his activities that evening. The error was thus harmless. (*People v. Watson, supra,* 46 Cal.2d at p. 836.)

## III

Defendant lastly contends the trial court erred because it failed to instruct the jury to consider separately the guilt of each defendant. (CALJIC No. 17.00.)[3] Defendant argues the court had a duty sua sponte to give the instruction. He cites two appellate cases in support of his position. In *People v. Fulton* (1984) 155 Cal.App.3d 91 [201 Cal.Rptr. 879], the court held the instruction should be given sua sponte in a conspiracy prosecution where additional nonconspiracy counts had been joined. (*Id.,* at p. 101.) In *People v. Crain* (1951) 102 Cal.App.2d 566 [228 P.2d 307], in which a conspiracy prosecution was joined with an additional substantive count, the court held that a number of instructional omissions compelled reversals. (*Id.,* at pp. 581-582.) The *Crain* court was not prepared to impose on the trial judge a sua sponte duty to instruct the jury to consider separately the guilt or innocence of each defendant (*id.,* at p. 582), although it suggested the notion sufficiently that both *Fulton* and the Use Note to CALJIC No. 17.00 cite *Crain* as authority for such a duty. (*People v. Fulton, supra,* 155 Cal.App.3d at p. 101; see Use Note to CALJIC No. 17.00.)

---

[3]CALJIC No. 17.00 provides: "In this case, you must decide separately whether each of the [two] [several] defendants is guilty or not guilty. If you cannot agree upon a verdict as to [both] [all] the defendants, but do agree upon a verdict as to one [or more] of them, you must render a verdict as to the one [or more] upon which you agree."

Both *Fulton* and *Crain* were prosecutions which joined conspiracy and substantive counts. They do not directly answer the question whether CALJIC No. 17.00 should be given sua sponte where multiple defendants are charged with non-conspiracy counts only. *Crain,* upon which *Fulton* and the Use Note to CALJIC No. 17.00 relied, expressly disavowed any such holding. (*People* v. *Crain, supra,* 102 Cal.App.2d at p. 582.) ■ But whether or not *Crain* and *Fulton* are authority for the proposition asserted here by defendant, we believe the trial court did have a duty sua sponte to give the instruction where multiple defendants were being tried.

The sua sponte duty of the trial court to instruct the jury has been discussed by the California Supreme Court. The court has stated: " ' "[i]t is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. [Citations.]" ' " (*People* v. *Edwards* (1985) 39 Cal.3d 107, 117 [216 Cal.Rptr. 397, 702 P.2d 555]; *People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390].) It is fundamental that when more than one defendant is prosecuted in an action, the jury must consider separately the guilt or innocence of each defendant. This is a general principle of law openly and closely connected with the facts of any case involving multiple defendants. The instruction should have been given even absent a request.

■ Although the court erred when it failed to give the instruction in question, we find the error harmless. Counsel has pointed to no evidence and we have found none which was improperly used against defendant. This is not a case where, for example, the flight of one defendant was improperly used as evidence of the guilty conscience of another, nonfleeing defendant. To reiterate, the case against the two defendants was inescapably formidable. An eyewitness identified the two defendants exiting the rear of the burglarized premises. The defendants were then found hiding in private yards very close to the crime scene. They had in their possession the precise and somewhat distinctive items stolen from the victim's home. Defendant offered an explanation for his presence that failed to account for nearly three hours during the evening and which was implausible on its face. In view of such evidence, we are confident that a more favorable result would not be reasonably probable even had the instruction been given. (*People* v. *Watson, supra,* 46 Cal.2d at p. 836.) Further, we find the error was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

## Disposition

The judgment is affirmed.

Blease, Acting P. J., and Carr, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 18, 1987.