Filed 1/29/14  P. v. Rios CA2/6
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE LUIS RIOS,<br><br>    Defendant and Appellant. | 2d Crim. No. B245665<br>(Super. Ct. No. 2012001531)<br>(Ventura County) |

Jose Luis Rios appeals his conviction, by jury, of sexual penetration by a foreign object of a person under 16 years of age (Pen. Code, § 289, subd. (i))[1], and one misdemeanor count of sexual battery.  (§ 243.4, subd. (e)(1).)   The trial court sentenced appellant to prison for the middle term of two years for the section 289 violation and a concurrent term of 180 days for the misdemeanor conviction. Appellant contends the trial court erred when it failed to hold a hearing on his motion, pursuant to Evidence Code section 782, to introduce evidence that the 15-year old complaining witness had not yet disclosed her pregnancy to her parents when she accused appellant of these offenses.  He further contends the trial court erred when it instructed the jury in terms of CALCRIM No. 361. Finally, appellant contends

---

[1] All statutory references are to the Penal Code unless otherwise stated.

1

statements he made to police before he was advised of his *Miranda*[2] rights should have been excluded from evidence.  We affirm.

*Facts*

In January 2012, E.R. was 15 years old.  Her parents were separated. She spent every other weekend with her father, Albert, who lived with his own parents in Oxnard.  Appellant, who is Albert's half-brother, lived in the same house.  E.R. and appellant did not know each other well and had never spent much time together.

Late one night, E.R. and her sister were in the living room, watching a TV movie with appellant.  E.R. was lying on an air mattress with appellant.  She fell asleep.  She woke up at about 5:30 a.m., because she felt appellant's hand inside her shorts.  He was moving his finger inside her vagina, in a circular motion.  Appellant also touched her breast, pulled her leg onto his stomach and kissed her knee.  He did not seem to be asleep.  E.R. moved off the air mattress onto the floor and wrapped herself tightly in her blanket.  About 10 minutes later, appellant complained that he was cold and asked E.R. to share her blanket with him.  She did not respond.  E.R. stayed awake, on the floor, until others in the house woke up.

E.R. stayed close to her father that day but didn't tell him about what had happened.  She disclosed the incident to her boyfriend, Justin, during an evening telephone call.  He encouraged her to tell her father.  E.R. did so after the call with Justin ended.  The next day, E.R.'s father brought her to the Oxnard police station to report the crime.  E.R. made a pretext call to appellant.  When she told appellant that she did not understand what had happened during the incident, he replied, "I'm sorry. [] I didn't know what the hell was going on through my head.  I didn't mean to do anything like that."  E.R. said that she did not understand why appellant put his hand down her pants.  He said that he did not remember doing that, but if he did, he was "truly deeply sorry."  Throughout the call, appellant claimed he did not remember doing anything to E.R., but he also apologized to her several times.  E.R. told appellant

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 444 (*Miranda*).

2

that what had happened was embarrassing. He replied, "I know it is." Although he continued to say he did not recall doing anything, he told E.R. he would not do it again. Appellant eventually ended the call, saying that he had to get back to work.

A few days later, two detectives from the Oxnard Police Department, Juanita Suarez and Erica Escalante, contacted appellant at his place of work. He agreed to drive himself to the police station for an interview. Once there, appellant went into an interview room with the detectives. They left the door open and told appellant that he was free to leave at any time, that he was not under arrest and that he could choose whether to answer any of their questions.

During their 90 minute video-recorded interview, appellant denied touching E.R. He said he told E.R. that he did not remember touching her because he was caught off guard by her accusation. His family thought he had touched her, but he hadn't. Appellant said E.R. was lying, but he did not know why she would lie about the incident. Appellant also said he believed E.R. was attracted to him.

One of the detectives told appellant that his family already thought he had touched E.R., so it would be best for him if he was able to pick himself up and move forward. Appellant asked how he could do that. The detective said they already knew he made the mistake and touched E.R. E.R. felt better after she talked about what happened; the detective suggested that appellant would also feel better if he did the same. Appellant then said that he was asleep on the air mattress with E.R. When he woke up, he had his hand was in her pants. He realized what he had done and pulled away from her. Appellant denied touching E.R.'s vagina or breast. He claimed that he was "grossed out" by what happened and did not know how his hand got inside her pants.

The detective asked appellant to write a letter of apology to E.R. He agreed to do so. As she left the room to get him paper for the letter, she asked appellant if he wanted the door open or closed. He wanted to close the door, so she did. Appellant then wrote his letter to E.R. It stated, "E.R., I am deeply sorry for what

3

took pla[c]e. I never meant to do those things to you. I don't know what was going on through my head. I won't be able to forgive myself for what I've done. I promise I won't do anything like this to anyone. Sorry. " Appellant was placed under arrest after he finished writing the letter.

In his testimony at trial, appellant denied touching E.R. at all. He said that he first learned about E.R.'s accusation in a text message from his brother, Albert, telling him to get his belongings out of the house and not come back. He apologized to E.R. in the pretext call because he thought she would stop making accusations against him. He was trying to avoid conflict.

Appellant testified that he told the detectives he put his hand down E.R.'s pants because they did not believe him when he told them the truth. He thought he had no other choice but to admit it, even though he had not touched E.R. He believed he had to tell the detective what she wanted to hear and that she would allow him to leave if he admitted touching E.R. When he wrote the apology letter to E.R., he wrote what the detectives told him to.

Appellant testified that, in his family it was not uncommon for family members, such as nieces and nephews, to sleep in the same bed as their adult relatives. During his interview with the detectives, however, appellant stated that he thought sleeping in the same bed as E.R. was kind of weird. Appellant also testified that Spanish is his first language and claimed to have been confused by some of the detectives' questions. On cross-examination, he stated that he had graduated from high school in California, where his classes were in English. He did not request an interpreter for the trial because he understood what was happening.

*Discussion*

*Evidence of E.R.'s Pregnancy*

E.R. discovered she was pregnant shortly before the incident with appellant occurred. She had not yet told her parents about the pregnancy. Before trial, appellant's trial counsel filed a motion under Evidence Code section 782 to admit

4

evidence of E.R.'s pregnancy. Counsel argued the pregnancy was relevant to E.R.'s motive the fabricate the assault and was also relevant to test the credibility of other prosecution witnesses on cross examination. Counsel speculated that E.R. may have fabricated the assault to distract attention from her pregnancy.

At a hearing on pretrial motions, defense counsel informed the court that she intended to file an affidavit under seal in support of the motion. The trial court declined to read any sealed document "until I know what statute or case stands for the proposition that I'm able to receive it under seal . . . . [¶] And if you can provide me with the authority, I'll make sure I read it. If I can consider it without [the prosecutor] seeing it, I'll consider it." Defense counsel withdrew the motion while she considered whether to file an affidavit that was not under seal.

The next day, E.R.'s boyfriend Justin F., testified that E.R. was emotional and upset during their conversation. He said this was the first time she had cried during their relationship. Defense counsel then asked, "Okay. And at this point, was this before or after she told you that she was pregnant?"

In a subsequent argument over the propriety of that question, defense counsel made an offer of proof concerning the relevance of E.R.'s pregnancy: "If a 15-year-old is pregnant and she doesn't tell her mother she's pregnant and she doesn't want to tell her mother about this event and she texts her father, she avoids the problem until the problem becomes obvious. The problem becomes obvious within 30 to 40 days. [¶] This distracted the family while she developed an idea with [Justin F.] of how to explain to the family that they were now going to be parents at age 15 and 17, now 16 and 18." Defense counsel argued E.R.'s pregnancy was also relevant to Justin F.'s credibility. The trial court rejected both arguments. It concluded E.R.'s pregnancy was not relevant because, "The fact that a person is pregnant does not mean it's a motive to commit a lie, to be happy, to have any particular motive."

The trial court also noted that defense counsel had not filed a motion under section 782 to admit evidence of the complaining witness' sexual conduct. It

described counsel's prior motion as "fatally defective" because counsel "didn't file an affidavit. And the Evidence Code specifically requires it."

Later in the trial, defense counsel renewed her motion to admit evidence of E.R.'s pregnancy, filing an affidavit that was not under seal. Defense counsel contended in her affidavit that the prosecution's failure to disclose E.R.'s pregnancy during discovery was a *Brady*[3] violation. Counsel further argued the pregnancy gave E.R. a motive to lie about the assault. E.R. was not concerned about maintaining her privacy because she had discussed her pregnancy on social media sites. The trial court again ruled the pregnancy was irrelevant.

Appellant now contends the trial court erred because it did not hold a hearing, outside the presence of the jury, at which counsel would have questioned E.R. concerning her pregnancy, to establish that the evidence was admissible and relevant to her credibility. Although we agree the trial court should have permitted counsel to file a sealed affidavit in support of her section 782 motion, we conclude the trial court did not prejudicially err when it declined to hold a hearing on the motion.

Evidence Code section 782 applies in prosecutions for sex offenses, such as the one at issue here. (Evid. Code, § 782, subd. (c).) Subdivision (a) of the statute provides that, "if evidence of sexual conduct of the complaining witness is offered to attack the credibility of the complaining witness under Section 780, the following procedure shall be followed: [¶] (1) A written motion shall be made by the defendant to the court and prosecutor stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the complaining witness proposed to be presented and its relevancy in attacking the credibility of the complaining witness. [¶] (2) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated. The affidavit shall be filed under seal and only unsealed by the court to determine if the offer of proof is sufficient to order a hearing pursuant to paragraph (3). . . . [¶] (3) If the court finds that the offer of proof is sufficient, the

---

[3] *Brady v. Maryland* (1963) 373 U.S. 83, 87 [10 L.Ed.2d 215].

6

court shall order a hearing out of the presence of the jury, if any, and at the hearing allowing the questioning of the complaining witness regarding the offer of proof made by the defendant. [¶] (4) At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant . . . is relevant . . . and is not inadmissible pursuant to Section 352, the court may make an order stating what evidence may be introduced by the defendant, and the nature of the questions to be permitted. . . ." (Evid. Code, § 782, subd. (a).)

As subdivision (a)(2) of the statute makes plain, appellant's trial counsel was entitled to file a sealed affidavit in support of the motion. The trial court erred when it refused to review the sealed affidavit. We note, however, that the court stated it would review the sealed affidavit if trial counsel cited authority for its ability to do so. Rather than refer the court to subdivision (a)(2) of Evidence Code section 782, counsel withdrew the motion. Counsel could promptly have corrected the trial court's error had counsel cited the relevant portion of the statute.

The error was, however, harmless because counsel later supported the motion with an affidavit that was not filed under seal and does not contend on appeal that additional information would have been included in an offer of proof submitted by sealed affidavit. As the trial court correctly concluded, counsel's affidavit did not demonstrate that evidence of E.R.'s pregnancy was relevant to her credibility. Evidence Code section 782 requires defense counsel to make a written offer of proof explaining the relevance of the complaining witness' sexual conduct to his or her credibility. If the written offer of proof does not demonstrate that the evidence would be relevant to credibility, the trial court is not required to hold a hearing on the motion. (Evid. Code, § 782, subd. (a)(2), (3); *People v. Rioz* (1984) 161 Cal.App.3d 905, 916.) " 'A trial court's ruling on the admissibility of prior sexual conduct will be overturned on appeal only if appellant can show an abuse of discretion.' " (*People v. Bautista* (2008) 163 Cal.App.4th 762, 782.) There was no abuse here because the trial court

7

correctly concluded that defense counsel's offer of proof was not sufficient to demonstrate that evidence of E.R.'s pregnancy was relevant to her credibility.

Appellant contended E.R.'s pregnancy gave her a motive to lie to her parents about the sexual assault, so they would be distracted or more sympathetic toward her when she told them about her pregnancy. Like the trial court, we are not persuaded. First, defense counsel's offer of proof never explained why E.R. would go to such extraordinary lengths to generate sympathy from her parents.

Second, the fact of E.R.'s pregnancy does not make her description of the assault any more or less believable. Respondent never claimed that E.R. was too young to know about sexual behavior unless she had been abused. (See, e.g., *People v. Daggett* (1990) 225 Cal.App.3d 751, 757.) As a teenager, E.R. was old enough to have that knowledge, even if she had no personal experience. Her personal sexual experience has no probative value in determining her credibility.

Finally, any error in failing to hold an evidentiary hearing on the motion was harmless because there is no reasonable probability appellant would have obtained a more favorable result had the trial court allowed E.R. to be questioned on this matter. (*People v. Chandler* (1997) 56 Cal.App.4th 703, 711.) Given the tenuous link between E.R.'s pregnancy and her credibility, the trial court would have had discretion to exclude the evidence on the ground that its probative value was outweighed by its potential for undue prejudice. (Evid. Code, § 782, subd. (a)(4); *People v. Fontana* (2012) 49 Cal.4th 351, 370.) Moreover, the evidence against appellant was strong. E.R. promptly reported the incident to her boyfriend, her father and the police; appellant admitted touching E.R. during the pretext call and in his interview with the detectives. Under these circumstances, it is not reasonably probable appellant would have obtained a more favorable result had the evidence been presented to the jury.

*Instructional Error*

Appellant contends the trial court erred when it instructed the jury, in terms of CALCRIM No. 361 that, "If the defendant failed in his testimony to explain

8

or deny evidence against him, and if he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilt. The People must still prove the defendant guilty beyond a reasonable doubt. [¶] If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure." According to appellant, the instruction is not supported by the record because there are no facts, other than E.R.'s motive to lie, that he failed to explain or deny. We disagree.

CALCRIM No. 361 is properly given where the defendant " 'failed to explain or deny any fact of *evidence that was within the scope of relevant cross-examination.'* " (*People v. Lamer* (2003) 110 Cal.App.4th 1463, 1469.) A contradiction between the defendant's testimony and that of another witness is not enough to support the instruction. (*Id.*) In addition, "[i]f a defendant has not been asked an appropriate question calling for either an explanation or a denial, the instruction cannot be given, as a matter of law." (*People v. Roehler* (1985) 167 Cal.App.3d 353, 392.) The instruction is, however, properly given where there are "logical gaps" in the defendant's testimony (*People v. Redmond* (1981) 29 Cal.3d 904, 911), or where "the defendant tenders an explanation which, while superficially accounting for his activities, nevertheless seems bizarre or implausible . . . ." (*People v. Mask* (1986) 188 Cal.App.3d 450, 455.)

The trial court here properly instructed the jury in terms of CALCRIM No. 361 because there were several facts he failed plausibly to explain. For example, appellant testified on direct examination that his cell phone rang during his interview with Detective Suarez. On cross-examination, appellant said he told the detective at the beginning of the interview that his phone had been deactivated because he hadn't paid the bill. The prosecutor asked whether appellant was lying when he said his phone was working on the day of the interview. Appellant replied, "No. 'cause I

9

remember it rang." Appellant then said he lied about his phone being deactivated and then said he only thought it had been deactivated.

Appellant testified on direct examination that he falsely confessed because E.R.'s father, Albert R., threatened to harm him for touching E.R. Appellant testified he was "not a person who likes to get into conflict. So whenever there is conflict, I would rather take another route and just end it and get it over with." He thought falsely confessing "was going to end the problem." Appellant could not, however, explain how falsely confessing to the assault would prevent Albert R. from harming him or "end the problem" between them.

Appellant testified that, when he wrote the apology letter to E.R., he only wrote what Detective Suarez told him to. He also testified, however, that Detective Suarez left the room while he wrote the letter. He did not explain how she could dictate the content of the apology letter to him when she was not in the room while he wrote it. In a similar vein, appellant told the prosecutor he would remember having touched E.R.'s vagina or breasts because those were "big things." Then, the prosecutor asked, "So it's your testimony as you sit here today that none of that, not a single one of those things ever happened. Is that your testimony?" Appellant replied, "As my knowledge, no." He then said, "I don't remember it happening."

Appellant was unable to explain any of these logical gaps and implausible explanations in his testimony. They provide adequate evidentiary support for the instruction. There was no error.

### Miranda

Appellant contends the trial court erred when it admitted into evidence statements he made during his interview with the detectives because he was not given his *Miranda*[4] warnings before the interview began. We disagree. Appellant was not in custody when he made the statements at issue; there was no requirement that he be advised of his rights to remain silent and to counsel.

---

[4] *Miranda v. Arizona* (1966) 384 U.S. 444.

A person may not, consistent with the Fifth Amendment privilege against self-incrimination, be subjected to custodial interrogation by law enforcement unless that person knowingly and intelligently waives his or her right to remain silent, to have an attorney present and, if indigent, to have appointed counsel. (*People v. Storm* (2002) 28 Cal.4th 1007, 1021.) These rights attach when the person is in custody, in the sense that "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." (*California v. Beheler* (1983) 463 U.S. 1121, 1125 [77 L.Ed.2d 1275].) The question of whether a person is in custody is determined by "the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." (*Stansbury v. California* (1994) 511 U.S. 318,323 [128 L.Ed.2d 293].) We "defer to the trial court's resolution of disputed facts, including the credibility of witnesses, if that resolution is supported by substantial evidence[,]" and independently determine whether the challenged statement was obtained in violation of *Miranda*. (*People v. Gurule* (2002) 28 Cal.4th 557, 601.)

Here, the trial court correctly determined that appellant was not in custody during his interview with the detectives. The detectives initially contacted appellant at his work, near the end of his shift. They were wearing plain clothes and concealed both their badges and their weapons. They asked appellant if he would go with them to the police station; they did not tell appellant he was required to accompany them. Appellant drove his own vehicle to the station. The interview was conducted in a standard interview room, containing a table and five chairs. The detectives told appellant that he was free to leave at any time, he was not under arrest and that he could choose to answer, or to not answer any of their questions. They left the door to the interview room open during the interview, closing it only when they left the room so appellant could write his letter of apology. At no point was appellant placed under any physical restraint such as handcuffs. These facts are substantial evidence that appellant was not "in custody" before he was informed, at the end of the

11

interview, that he could not leave the station. (*People v. Stansbury* (1994) 9 Cal.4th 824, 832-833; *People v. Chutan* (1999) 72 Cal.App.4th 1276, 1282-1283.) Accordingly, the trial court correctly admitted appellant's pre-advisement statements into evidence.

*Conclusion*

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                        YEGAN, J.


We concur:


GILBERT, P.J.


PERREN, J.


12

Kent Kellegrew, Judge

Superior Court County of Ventura

_____

Sharon M. Jones, under appointment by the Court of Appeal, for Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Zee Rodriguez, Deputy Attorney General, for Plaintiff and Respondent.