Filed 8/24/20  P. v. Gamboa CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072259 |
| v. | (Super.Ct.No. FSB17000629) |
| JOSE GAMBOA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  David J. Mazurek, Judge.  Affirmed with directions.

Doris M. LeRoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Paige B. Hazard and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

On February 5, 2017, Alberto Casillas was gunned down near his home. Defendant, Jose Enrique Gamboa, was charged and convicted by a jury of first degree murder (Pen. Code, § 187)[1] of Alberto Casillas and of personally using a firearm (§ 12022.53, subd. (b)), personally using and intentionally discharging a firearm (§ 12022.53, subd. (c)), and personally using and intentionally discharging a firearm causing death (§ 12022.53, subd. (d)) during the commission of a felony. The court also found that defendant had suffered four prior convictions for which he had served prison terms (prison priors) pursuant to section 667.5, subdivision (b). Defendant was sentenced to an aggregate term consisting of an indeterminate term of 50 years to life plus a determinate term of four years for the prison priors.[2] Additionally, defendant was ordered to pay a $3,000 restitution fine (§ 1202.4, subd. (b)), a matching parole revocation fine that was suspended (§ 1202.45), a $30 criminal convictions assessment (Gov. Code, § 70373, subd. (a)(1)), and a $40 court operations assessment (§ 1465.8, subd. (a)(1)). Defendant appealed.

On appeal, defendant contends: (1) the trial court erred in denying defendant's motion for a new trial; (2) the trial court violated his Sixth Amendment right to confront witnesses against him by limiting cross-examination of a prosecution witness; (3) the trial court erred in instructing the jury on CALCRIM No. 372, regarding flight after crime; (4)

---

[1] All references, unless otherwise noted, are to the Penal Code.

[2] The court stayed the sentences for sections 12022.53 subdivisions (b) and (c) pursuant to section 12022.53, subdivision (f).

2

the combined effect of these errors denied defendant a fair trial; (5) there was insufficient evidence defendant served four prior prison terms within the meaning of section 667.5, subdivision (b); (6) there is no evidence that defendant has the ability to pay the restitution fine in the amount of $3000. In a supplemental brief, defendant asserts and respondent concedes, that his sentence must be modified under Senate Bill No. 136 (Senate Bill 136) to strike the one-year enhancements for prior convictions.[3]

## BACKGROUND

Near 4:00 a.m. on February 5, 2017, Alberto Casillas (Casillas) and his girlfriend, Jennifer Richardson (Richardson), were walking to their home in San Bernardino. On their walk home, Casillas's longtime friend V.C.[4] called out to Richardson from his vehicle. Richardson and Casillas stopped to speak to V.C., who in turn parked and exited his white vehicle. A short time later, an individual known to Casillas, Richardson, and V.C. only as "Kiki" (Kiki) pulled up in a black Honda vehicle and parked near them. Kiki was later identified as defendant Gamboa.

After exiting his vehicle, defendant approached Richardson, Casillas, and V.C. Casillas owed defendant money for drugs. Defendant immediately requested Casillas pay him. According to Richardson, before Casillas could answer, defendant swung at

---

[3] In light of the legislative changes enacted by way of Senate Bill 136, defendant's argument that there was insufficient evidence to support the true finding on the four prison prior enhancement allegations under section 667.5, subdivision (b), is now moot.

[4] This witness had acted as a confidential informant for law enforcement in the past, so we will refer to him by his initials, V.C.

Casillas and missed. In turn, Casillas ran down the street while Richardson tried to work out a deal with defendant and V.C. to pay Casillas's debt. Richardson and defendant agreed that Richardson would pay defendant what was owed the next day.

After making the agreement, Richardson left V.C. and defendant to catch up to Casillas and continue home. V.C. then saw defendant with a gun and heard defendant say something along the lines of wanting to shoot. Then, V.C. reversed his car into the driveway of a nearby apartment complex.

Meanwhile, defendant drove down the street to where Casillas and Richardson were at. Defendant exited his car and pointed a gun at Casillas and Richardson. Casillas ran, and defendant fired nine shots. V.C. saw defendant fire the shots. Richardson heard Casillas yell, "I'm hit," and saw his body on the ground. Defendant got back into his car after the shooting, while V.C. jumped into his own car and left in the opposite direction of the crime scene. Casillas was transported to the hospital but died. The autopsy determined the cause of death to be a gunshot wound to the back.

Richardson identified the shooter as defendant throughout the investigation. Initially, detectives showed her two six pack photo lineups to identify Kiki, but neither lineup included a photo of defendant, so Richardson did not identify anyone. However, the third six pack photo lineup included a photograph of defendant and Richardson identified defendant as Kiki, the shooter.

As part of the investigation, detectives also spoke to V.C. Initially, V.C. was hesitant to speak to detectives regarding the shooting and asked to speak to a detective

4

with whom he was familiar. Although that detective did not appear at the interview, V.C. cooperated with the detectives investigating Casillas's murder without the attendance of the requested detective. That detective did appear at the end of V.C.'s interview, but did not speak to V.C. regarding the case, nor did that detective offer or promise V.C. anything in exchange for his cooperation in this case. V.C. told detectives that he recalled the shooting and saw Kiki shoot Casillas. V.C. then identified Kiki as defendant and helped police locate him.

When interviewed by detectives, defendant admitted to being at the crime scene in a black vehicle. Defendant also admitted to having a confrontation with Casillas. Additionally, defendant corroborated Richardson's attempt to settle Casillas's debt with him. Defendant also confirmed he was known as Kiki.

By way of an amended information, defendant was charged with the murder (§ 187) of Casillas. It was further alleged that in the commission of the crime, defendant personally and intentionally discharged a firearm causing great bodily injury and death (§12022.53, subd. (d); personally using and intentionally discharging a firearm (§ 12022.53, subd. (c)), and personally using a firearm (§ 12022.53, subd. (b)). It was further alleged that defendant had suffered four prior convictions for which he had served separate prison terms (prison priors) (§ 667.5, subd. (b)).

A jury found defendant guilty of all charges on November 16, 2018. On February 1, 2019, defendant filed a motion for a new trial or modification of verdict arguing insufficient credible evidence to sustain the verdict. The prosecution opposed the motion

5

which was denied on March 1, 2019. The court noted that it found Richardson was particularly credible, the evidence supported her testimony, and that all the witnesses, including defendant himself, placed defendant at the crime scene. Therefore, the only logical conclusion was that defendant was the shooter.

After ruling on the motion, the court sentenced defendant to a total indeterminate term of 50 years to life plus a determinate term of four years. The indeterminate term consisted of 25 years to life for the murder charge (§ 187) plus a 25-years to life consecutive term for personally using and intentionally discharging a firearm causing death (§ 12022.53, subdivision (d)). The determinate sentence consisted of one year for each prior prison conviction pursuant to section 667.5, subdivision (b). All other sentences were stayed. Additionally, defendant was ordered to pay a $3,000 restitution fine (§ 1202.4, subd. (b)), a matching parole revocation fine that was suspended (§ 1202.45), a $30 criminal convictions assessment (Gov. Code § 70373, subd. (a)(1)), and a $40 court operations assessment (§ 1465.8, subd. (a)(1)).

Defendant timely appealed.

## DISCUSSION

### 1. *Trial Court Properly Denied Defendant's Motion for a New Trial*

Defendant contends that the trial court erred in denying defendant's motion for a new trial because there is insufficient evidence to support the jury's verdict. Specifically, defendant argues that there is a lack of witness credibility and points to inconsistencies between Richardson's and V.C.'s testimony. We disagree.

6

A criminal defendant may move for a new trial on specified grounds. (§ 1181.) Among these are trial or instructional error, or prosecutorial misconduct (§ 1181, subd. 5), a verdict contrary to the law or facts (§ 1181, subds. 6, 7), newly discovered evidence (§ 1181, subd. 8), and juror misconduct (§ 1181, subds. 3, 4), including the jury's receipt any evidence out of court. (§ 1181, subd. 2). (*People v. Ault* (2004) 33 Cal.4th 1250, 1260.)

In reviewing the evidence upon the filing of a new trial motion challenging the reliability of witness's testimony, "a trial court must review the evidence independently, considering the proper weight to be afforded to the evidence and then deciding whether there is sufficient credible evidence to support the verdict. [Citation.]" (*People v. Lewis* (2001) 26 Cal.4th 334, 364.) "A trial court's ruling on a motion for new trial is so completely within that court's discretion that a reviewing court will not disturb the ruling absent a manifest and unmistakable abuse of that discretion. [Citation.]" (*People v. Hayes* (1999) 21 Cal.4th 1211, 1260-1261.)

Thus, the appellate court reviews the evidence in the light most favorable to the trial court's ruling, drawing all factual inferences that favor the trial court's decision. (*People v. Johnston* (2003) 113 Cal.App.4th 1299, 1303–1304.) "The trial court's factual findings, express or implied, . . . will be upheld if supported by [any] substantial evidence." (*People v. Drake* (1992) 6 Cal.App.4th 92, 97.) After all, "'[it] is the exclusive province of the trial court to judge the credibility of the witnesses, determine the probative force of testimony, and weigh the evidence [citations].'" (*People v. Sheran*

(1957) 49 Cal.2d 101, 109.)  Therefore, the order will be reversed only if it can be said as a matter of law there is no substantial evidence to support a judgment contrary to the verdict.  (*Ibid*.)

Here, the trial court ruled there was sufficient evidence of defendant's guilt to support the jury's verdict and denied the motion for a new trial.  After considering defendant's credibility contentions, the trial court noted that it presided over the trial, recalled the evidence, and that in weighing the evidence independently would have come to the same verdict as the jury.  Despite defendant's contentions, the trial court "found Ms. Richardson's testimony particularly credible.  And especially in conjunction with the video interview with the detective within hours after the incident. . . .  [¶] . . . Ms. Richardson's testimony was also consistent with the physical evidence that was found in the case, the shell casings, the position of the vehicle."

The court went on to state that all witnesses, including defendant himself, placed defendant at the crime scene and agreed that there was a confrontation regarding the money the victim owed defendant.  The court also noted that all witnesses, including the defendant, stated defendant went to and ended up at the same intersection at which the victim was shot to death.  The trial court also stated it would not make sense for a third party to have shown up at the same time to commit the killing.

Given that it is the exclusive province of the trial court to weigh the evidence, judge witness credibility and determine the probative force of testimony and that the trial court's ruling is supported by substantial evidence, we find there is sufficient evidence to

8

support the jury's verdict. (See *People v. Sheran, supra,* 49 Cal.2d at p. 109; *People v. Drake, supra,* 6 Cal.App.4th at p. 97.) Therefore, the trial court did not err in denying defendant's motion for a new trial.

2. *The Limited Cross Examination of the Confidential Informant Was Harmless Beyond a Reasonable Doubt*

Defendant argues the trial court violated his Sixth Amendment right to confront witnesses against him by limiting his cross-examination of the prosecution's confidential informant. We disagree.

a. *Background*

Defendant made a motion in limine requesting an Evidence Code section 402 hearing regarding the interactions of two detectives with V.C., because they had not submitted reports about their interactions and conversations with V.C. Prior to the in limine hearing, the trial court ruled in chambers that details of prior contact between Detective Luna and V.C. concerning instances when V.C. had been a confidential informant were irrelevant, although for purposes of the Evidence Code section 402 hearing, counsel was permitted to lay a foundation that some prior contact had occurred. At the Evidence Code section 402 hearing, Detective Luna testified he had roughly 10 to 15 contacts with V.C. between 2010 and 2017. However, no promises of assistance were made.

During defendant's cross-examination of V.C. at trial, V.C. testified that he knew Detective Luna, so defense counsel requested a sidebar, in which he asked to be allowed

9

to question V.C. about his activities as a confidential informant. Defense counsel argued it was relevant for the jury to know that V.C. is somebody who works with law enforcement, and that he was a snitch. The court found the evidence was irrelevant where Detective Luna was not involved in this case, and V.C. was not made any promises or offers in exchange for his cooperation.

However, V.C. testified that when he was interviewed by Detective Cunningham, he asked for Detective Luna because he was not comfortable speaking on the record, but that the detective he asked for did not show up until the end of the interview. V.C. also testified he was initially hesitant to testify at trial because he had already been beaten up over his testimony. V.C. revealed that he was in custody, under protective custody, for failure to appear to testify previously in the case.

*b.      Discussion*

Trial courts have considerable discretion in "restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance." (*People v. Chatman* (2006) 38 Cal.4th 344, 372.) However, "'[n]ot every restriction on a defendant's desired method of cross-examination is a constitutional violation.'" (*People v. Elliott* (2012) 53 Cal.4th 535, 579, citing *Chatman, supra,* at p. 372.)

Thus, unless the defendant can show that the prohibited cross-examination would have produced "'a significantly different impression of [a witness's] credibility' [citation], the trial court's exercise of its discretion in this regard does not violate the Sixth Amendment." (*People v. Frye* (1998) 18 Cal.4th 894, 946.) Therefore, when

10

reviewing a trial court's decision regarding the scope of cross-examination we review for abuse of discretion. (*United States v. Bonanno* (9th Cir. 1988) 852 F.2d 434, 439, *cert. denied,* (1989) 488 U.S. 1016.) It is the defendant's burden to show that the prohibited cross-examination would have produced a significantly different impression of the witness's credibility. (*People v. Chatman, supra*, 38 Cal.4th at p. 372.)

"Confrontation clause violations are subject to federal harmless-error analysis under *Chapman v. California* (1967) 386 U.S. 18, 24." (*People v. Geier* (2007) 41 Cal.4th 555, 608.) Under this analysis, "'an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.'" (*Ibid.*, quoting *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 681).) "The harmless error inquiry asks: 'Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?' [Citation.]" (*People v. Geier, supra*, 41 Cal.4th at p. 608.)

In the present case, the issue of V.C.'s possible motivation or bias was an issue that the trial court took into consideration as early as the beginning of the trial. Yet, because the detective for whom V.C. had worked was not assigned to the investigation of the current offense and did not make any offers or promises to V.C. in return for his cooperation, testimony about V.C.'s work as a confidential informant would not have revealed a motive or bias. Further, the prohibited cross-examination would not have produced "a significantly different impression of [a witness's] credibility." (*Delaware v. Van Arsdall, supra,* 475 U.S. at p. 680.)

11

There was no error.  However, even if the court had erred, any error would have been harmless beyond a reasonable doubt, given Richardson's testimony about the shooting and the identification of defendant as the shooter.  Given the evidence, even setting aside V.C.'s testimony and any possible error from it, it is clear the jury would have found defendant guilty.  (See *People v. Geier, supra*, 41 Cal.4th at p. 608.)

　　　3.　　　*Trial Court Did Not Err in Giving the Flight Instruction, CALCRIM No. 372.*

Defendant argues it was error to instruct the jury it could consider defendant's flight as consciousness of guilt (CALCRIM No. 372 ) because the main issue in the case was identification, and the instruction created an unsupported inference of defendant's guilt.[5]  We disagree.

The flight instruction reads:  "If the defendant fled [or tried to flee] (immediately after the crime was committed/[or] after (he/she) was accused of committing the crime), that conduct may show that (he/she) was aware of (his/her) guilt.  If you conclude that the defendant fled [or tried to flee], it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled [or tried to flee] cannot prove guilt by itself."  (CALCRIM No. 372 (2019).)

---

[5] The People contend that defendant has forfeited the issue by failing to object to CALCRIM No. 372 in the trial court.  However, an appellate court "may also review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."  (§ 1259.)  Additionally, the California Supreme Court has found that challenges to the flight instruction on appeal are cognizable even in the absence of a contemporaneous objection in the lower court.  (*People v. Rogers* (2013) 57 Cal.4th 296, 332, fn. 5.)

"'In general, a flight instruction "is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt." [Citations.] "'[F]light requires neither the physical act of running nor the reaching of a far-away haven. [Citation.] Flight manifestly does require, however, a purpose to avoid being observed or arrested.'" [Citation.]' [Citation.]" (*People v. Leon* (2015) 61 Cal.4th 569, 607.)

"If there is evidence identifying the person who fled as the defendant, and if such evidence 'is relied upon as tending to show guilt,' then it is proper to instruct on flight. (§ 1127c.) 'The jury must know that it is entitled to infer consciousness of guilt from flight and that flight, alone, is not sufficient to establish guilt. (§ 1127c.) The jury's need to know these things does not change just because identity is also an issue. Instead, such a case [only] requires the jury to proceed logically by deciding first whether the [person who fled] was the defendant and then, if the answer is affirmative, how much weight to accord to flight in resolving the other issues bearing on guilt. The jury needs the instruction for the second step.' [Citation.]" (*People v. Mason* (1991) 52 Cal.3d 909, 943.) "The instruction also does not lessen the prosecution's burden of proof even if the identity of the perpetrator is at issue." (*People v. Johnson* (2015) 61 Cal.4th 734, 774, citing *People v. Avila* (2009) 46 Cal.4th 680, 710.)

At one time, it was deemed improper to give an instruction on flight where identity was a contested issue. (*People v. Anjell* (1979) 100 Cal.App.3d 189, 199.) The reasoning was that flight "is a factor tending to connect an accused with the commission

13

of an offense." (*People v. Moore* (1963) 211 Cal.App.2d 585, 600.) However, a flight instruction which assumes "'neither the guilt nor the flight of the defendant'" is not erroneous. (*People v. Anjell, supra,* 100 Cal.App.3d at p. 200, citing *People v. Cannady* (1972) 8 Cal.3d 379, 392, quoting *People v. Daener* (1950) 96 Cal.App.2d 827, 832-833.) In other words, an instruction on flight is only improper if it does appear to assume such "guilt." (*Anjell, supra.*)

The statement from *Anjell, supra,* has largely been rejected in more recent years. (*People v. Mason* (1991) 52 Cal.3d 909, 943.) Under the more modern approach if there is evidence identifying the person who fled as the defendant, and if such evidence "is relied upon as tending to show guilt," then it is proper to instruct on flight. (§ 1127c; *People v. Mason, supra*, 52 Cal.3d at p. 943.)

Here, although defendant proffered a third party culpability defense, this was not a mistaken identity case. There was evidence from two eye witnesses identifying defendant as the person who shot the victim and then fled, which shows guilt. Specifically, Richardson and V.C. both identified defendant as the shooter. V.C. observed defendant get back into his car and leave the scene. Other witnesses observed a car fleeing the scene. This evidence showed defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt.

Thus, there was evidence of guilt aside from defendant's flight, and defendant's identity as the person fleeing was established. The court properly instructed the jury that

14

"If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct." The jury was properly instructed.

4. *Defendant Was Not Denied a Fair Trial*

Defendant asserts his trial was infected by the errors committed, depriving him of a fair trial. We disagree.

It is true that a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009**;** *People v. Hill* (1998) 17 Cal.4th 800, 844.) However, we have found no errors, so there are no collective errors to evaluate for prejudice. (See People v *Lua* (2017) 10 Cal.App.5th 1004, 1019 ["we find any arguable errors also to be harmless when considered collectively, for the same reasons we have found no prejudice from them individually"].)

Defendant was entitled to a fair trial, but not a perfect one. (*People v. Cunningham, supra,* 25 Cal.4th at pp. 926, 1009, and cases cited; see also, *People v. Jasso* (2012) 211 Cal.App.4th 1354, 1378.) There was no series of trial errors resulting in prejudice to defendant, and he was not deprived of a fair trial.

5. *Defendant's Prior Prison Enhancements Must Be Stricken*

In defendant's original opening brief, he argued there was insufficient evidence that defendant had suffered four separate prior prison terms, and sought to have one of the prior prison enhancements be stricken. However, in a supplemental brief, defendant seeks retroactive application of the recent amendment to section 667.5, as part of Senate

15

Bill 136 which requires that all four enhancements be stricken, rendering the original issue moot. The People concede that defendant is entitled to relief. We agree.

Prior to the enactment of Senate Bill 136, section 667.5 provided for the imposition of a one-year term for each prior separate prison term served by a defendant. However, Senate Bill 136 (2019–2020 Reg. Sess.), amended former section 667.5, subdivision (b), and went into effect on January 1, 2020. Under this amendment, a one-year prior prison term enhancement will only apply if a defendant served a prior prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). (See Stats. 2019, ch. 590, § 1; *People v. Lopez* (2019) 42 Cal.App.5th 337, 340-341; see also, *People v. Gastelum* (2020) 45 Cal.App.5th 757, 772.)

The statute is plainly ameliorative in nature because it reduces punishment. An amendatory statute lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendatory statute's effective date, unless the enacting body indicates a contrary intent, by the inclusion of either an express saving clause or its equivalent. (*People v. Lara* (2019) 6 Cal.5th 1128, 1134; *People v. DeHoyos* (2018) 4 Cal.5th 594, 600.) The parties agree that Senate Bill 136 is retroactive and the amendment to section 667.5, subdivision (b), applies in this case.

We therefore agree with other courts before us that have applied the amendment retroactively to all cases not final on appeal. (*People v. Lopez, supra,* 42 Cal.App.5th at p. 341, citing *In re Estrada* (1965) 63 Cal.2d 740, 742; see also, *People v. Cruz* (2020) 46

16

Cal.App.5th 715, 738-739.) Because none of defendant's prison prior convictions were for sexually violent offenses, we remand the case with directions to strike the one-year enhancements. (*People v. Keene* (2019) 43 Cal.App.5th 861, 865.)

6. *Defendant Forfeited Any Challenge to the Restitution Fine and Failed to Show Inability to Pay the Nominal Assessments.*

Defendant argues that the trial court improperly imposed a $3,000 restitution fee (§ 1202.4, subd. (b)), a $40 court operations assessment (§ 1465.8), and a $30 criminal conviction assessment (Gov. Code, § 70373) fee without first considering his ability to pay. However, defendant forfeited any challenge to the $3,000 restitution fine by failing to object. As for the imposition of court fees and assessments, even if defendant was entitled to a hearing on his ability to pay, any error was harmless beyond a reasonable doubt.

a. *The Restitution Fine*

It has long been recognized that pursuant to section 1202.4, subdivision (c), trial courts may consider defendant's inability to pay when the imposed restitution is above the statutory minimum as defined in subdivision (b)(1). (§ 1202.4, subd. (c).) Therefore, if a defendant does not timely object to the restitution fine in the trial court, appellate challenge to that restitution fine is forfeited. (*People v. Taylor* (2019) 43 Cal.App.5th 390, 399-401; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1033; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154.)

17

Here, probation recommended a restitution fine of $10,000. Defense counsel asked the restitution be reduced to the statutory minimum arguing that "the mandatory minimum be imposed so that if the [c]ourt does impose an actual restitution amount for [defendant] to pay, his funds can go towards the actual restitution so that the family gets reimbursed rather than the money needing to go to the fund." The trial court imposed a reduced restitution fine in the amount of $3,000 in response to defendant's objection. Thereafter, defendant made no further objection. Any challenge to the reduced restitution fine has been forfeited. (See *People v. Taylor, supra,* 43 Cal.App.5th at pp. 399-401; *People v. Jones, supra,* 36 Cal.App.5th at p. 1033; *People v. Frandsen, supra,* 33 Cal.App.5th at p. 1154.)

### b. Court Fees and Assessments

Defendant also challenges the imposition of the court operations assessment and the criminal conviction assessment. With regards to the other imposed fees, a trial court must "conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before requiring a defendant to pay a restitution fine under section 1202.4 or assessments under section 1465.8 and Government Code section 70373. (*People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1164.) *Dueñas* was decided in January of 2019, and defendant was sentenced in March 2019. While the decision had only been filed two months before defendant's sentence, we must assume defendant's counsel was aware of it.

For cases involving fees or assessments imposed prior to the decision in *Dueñas*, we have held that a defendant was entitled to a hearing on his ability to pay unless the

18

error was harmless.  (*Jones, supra*, 36 Cal.App.5th at pp. 1034-1035.)  The rationale for considering such an issue despite the lack of objection was the policy under which "'[r]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence.' [Citations.]"  (*People v. Brooks* (2017) 3 Cal.5th 1, 92.)

Here, we cannot say that an objection would have been futile because the decision in *Dueñas* had already been published, and, significantly, because the trial court did adjust the restitution fine at defense counsel's request.  Nevertheless, even if we were to reach the issue, defendant has failed to demonstrate prejudice.  We will find Dueñas error harmless if the record demonstrates he cannot make a showing that he is eligible for relief.  (*People v. Jones, supra*, 36 Cal.App.5th 1028, 1035.)

A defendant's ability to pay includes "'[his] ability to obtain prison wages and to earn money after his release from custody.' [Citations.]"  (*People v. Cervantes* (2020) 46 Cal.App.5th 213, 229.)  When determining whether the trial court's failure to conduct an ability to pay hearing was harmless beyond a reasonable doubt, courts may consider the defendant's potential prison wages.  (*People v. Taylor, supra*, 43 Cal.App.5th at p. 402.)  "Every able-bodied person . . . is obligated to work."  (Cal. Code Regs., tit. 15, § 3040, subd. (a); § 2700.)  A prisoner's assignment "to a paid position is a privilege dependent on available funding, job performance, seniority and conduct."  (Cal. Code Regs., tit. 15, § 3040, subd. (k); accord, *People v. Rodriguez* (2019) 34 Cal.App.5th 641, 649.)  Prison wages range from $12 to $56 per month, depending on the job and skill level involved.

19

(Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1); *People v. Cervantes* (2020) 46 Cal.App.5th 213, 229.)  Fifty percent of a prisoner's wages and trust account deposits will be deducted to pay any outstanding restitution fine, plus another 10 percent for the administrative costs of this deduction.  (§ 2085.5, subds. (a), (e); Cal. Code Regs., tit. 15, § 3097, subd. (f); *People v. Rodriguez, supra,* 34 Cal.App.5th at p. 649; see also, *People v. Jones, supra,* 36 Cal.App.5th at p. 1035.)

Here, defendant was sentenced to 50 years to life (not counting the four prison priors that will be stricken), and the record contains no indication he is either unhealthy or unable to work.  (See *People v. Cervantes, supra*, 46 Cal.App.5th at p. 229.)  Also, he has not demonstrated that he will be unable to pay off the fees and assessments during his term time.  At the rate of $5.46 a month, the lowest monthly income he would earn after other deductions, defendant would be able to pay off the $40 court assessment fee and the $30 criminal conviction fee within one year and one month.  (See *People v. Taylor, supra*, 43 Cal.App.5th at p. 402.)  Thus, the error is harmless beyond a reasonable doubt.

## DISPOSITION

The convictions are affirmed.  We remand to the trial court with orders to strike defendant's four prison prior enhancements pursuant to the amended provision of section 667.5, subdivision (b), as well as to modify the sentencing minutes and the abstract of

20

judgment to reflect this change.  In all other respects the sentence is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

CODRINGTON
J.

RAPHAEL
J.